DECISION
{¶ 1} Defendant-appellant, Anthony W. Smith, appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, granting plaintiff-appellee, Merry A. Ruark (nka Humphrey), custody of the parties' minor child, K.D. Defendant assigns a single error:
The trial court erred in overruling the objections to the Report of the Magistrate that named Defendant [sic] the residential parent and legal custodian of the minor child of the parties.
Because the trial court did not abuse its discretion in granting custody of the minor child to plaintiff, we affirm.
 {¶ 2} Plaintiff and defendant lived together from the summer of 1991 until November 1994; K.D. was born to them in September 1992. On August 17, 1996, plaintiff and Trevor Humphrey were married; they have two children as the result of that marriage, Sydney and Lucas.
 {¶ 3} On February 2, 1995, plaintiff filed a complaint for custody of K.D. The matter was referred to mediation and, on June 23, 1995, the parties filed a "Plan for Shared Parenting." Although no shared parenting decree was entered, the parties generally complied with the shared parenting plan. Specifically, in the years before K.D. entered preschool, plaintiff dropped K.D. off at defendant's residence, and he cared for her while plaintiff worked. Once K.D. began preschool, K.D. lived with plaintiff through the school week and with defendant on the weekends.
 {¶ 4} As K.D. advanced through school, her schoolwork began to take more of her time during the week, and plaintiff, as a result, felt she was able to spend little quality time with K.D. The parties ultimately agreed that K.D. spend every other weekend and one night during the school week with defendant: Tuesday of the week preceding weekend visitation, and Thursday of the week following weekend visitation.
 {¶ 5} The matter came to the court's attention as a result of plaintiff's November 16, 2000 motion for reallocation of parental rights and responsibilities. As a result of that motion, a guardian ad litem, John Vogel, was appointed for K.D., and an agreed magistrate's order was entered on February 14, 2002, memorializing as a temporary order the parties' agreement that K.D. have alternating weekend visitation with defendant.
 {¶ 6} On January 29, 2002, defendant filed a motion for an in camera interview of K.D.; on February 5, 2002, plaintiff filed a motion for reasonable attorney fees and costs. On April 11, 2002, the guardian ad litem filed a report finding either parent would be a suitable custodian for K.D. Beginning September 27, 2002, a magistrate of the trial court conducted a hearing on plaintiff's motion for custody, defendant's motion for an in camera interview of K.D., and plaintiff's motion for attorney fees.
 {¶ 7} By report filed November 7, 2002, the magistrate issued a decision concluding that plaintiff's motion to reallocate parental rights and responsibilities would be resolved as a motion for custody, since no prior custody court orders were in effect. Accordingly, the magistrate determined no change of circumstances need be demonstrated. Applying R.C. 3109.04, the magistrate determined that "it is in the best interest of the minor child to designate mother, Merry A. Ruark (nka Humphrey), the residential parent and legal custodian of K.D. born September 24, 1992." (Magistrate's Decision, 2.) At the same time, the magistrate determined defendant's parenting time "should be somewhat more liberal than Loc.R. 22." In reaching her decision, the magistrate interviewed K.D. and considered the wishes the child expressed during the interview. Because no evidence was presented regarding plaintiff's motion for attorney fees, the magistrate determined the motion should be dismissed.
 {¶ 8} Defendant filed objections to the magistrate's decision and, on April 24, 2003, the trial court issued a decision and judgment entry overruling the objections and entering judgment in accordance with the magistrate's decision.
 {¶ 9} In his single assignment of error, defendant contends the trial court erred in granting plaintiff custody of K.D. Defendant's assignment of error essentially contends the trial court's judgment is against the manifest weight of the evidence, and that the trial court abused its discretion in granting plaintiff custody of K.D.
 {¶ 10} As the parties recognize, resolution of defendant's assignment of error is governed by R.C. 3109.04. Pursuant to R.C.3109.04(A), the trial court has the authority to allocate parental rights and responsibilities, as was requested in this case. R.C. 3109.04(B) requires that the allocation serve the best interests of the child. In ascertaining the best interests of the child, the trial court may, or on the request of any party shall interview the child. R.C. 3109.04(B)(1). In addition, the trial court shall consider all relevant factors, including those set forth in R.C. 3109.04(F)(1). In support of his assignment of error, defendant in particular points to the following factors: (1) the wishes of the child, as expressed in the in camera interview, (2) the parent most likely to honor and facilitate court ordered visitation, and (3) the environment of each prospective custodial home.
 {¶ 11} "The statutory standard is written broadly and requires the domestic relations judge to consider all factors that are relevant to the best interests of the child. The purpose of a far-reaching inquiry is to allow the judge to make a fully informed decision on an issue as important as which parent will raise the child. `The discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned. The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record.' (Citations omitted.) Miller v. Miller (1988),37 Ohio St.3d 71, 74. * * * A reviewing court will not overturn a custody determination unless the trial court has acted in a manner that is arbitrary, unreasonable, or capricious. Id. It is against this standard of broad discretion that we must review the scope of a trial court's inquiry * * *." Pater v. Pater (1992), 63 Ohio St.3d 393, 396.
 {¶ 12} "* * * A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not. The determination of credibility of testimony and evidence must not be encroached upon by a reviewing tribunal, especially to the extent where the appellate court relies on unchallenged, excluded evidence in order to justify its reversal." Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77,80-81. "This is even more crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does not
translate to the record well." Davis v. Flickinger (1997),77 Ohio St.3d 415, 419.
 {¶ 13} Here, the trial court evaluated the seven factors set forth in R.C. 3109.04(F)(1). The first factor to be considered under R.C.3109.04(F)(1)(a) is the wishes of the child's parents. As the trial court accurately noted, both parents seek to be K.D.'s residential parent. Plaintiff believes she will provide discipline and a loving home, and defendant believes he can provide K.D. with her own room, a loving environment that includes her grandmother, and a fulfillment to K.D.'s expressed desire to live with him.
 {¶ 14} The second factor is the wishes of the child. R.C.3109.04(F)(1)(b). At the hearing before the magistrate, defendant contended he sought custody of K.D. because he believed she wanted to live with him. In K.D.'s interview with the magistrate, however, K.D. was less than certain she wanted to change residences. As is probably true for many children caught in these circumstances, K.D. wanted to please both parents, and she would have liked to live with both parents. When asked whether she wanted to live with her father, she stated that she did; nonetheless, in response to other questions, she also indicated that she had no problems with her mother, with her stepfather, her siblings, or living at her mother's household. Although K.D. indicated she would like to try to "live with my dad" (Tr. 192), when the magistrate asked her why, K.D. responded "I don't know." Id. K.D.'s testimony is perhaps best summarized by her response to the magistrate's question asking whether K.D. wanted to see things change. K.D. responded, "I do, but I don't." (Tr. 196.) When the magistrate empathized and asked if K.D. would like the magistrate never again to ask her that question, K.D. responded "yeah." Id. In the end, K.D. was equivocal about where she wanted to live, but felt she could accept the magistrate's decision.
 {¶ 15} The court then considered the interaction and interrelationship of the parents, siblings, and any other person who may significantly affect K.D.'s best interest. R.C. 3109.04(F)(1)(c). As the trial court aptly noted, plaintiff and her husband spent time with K.D. and had good relationships with her. On the other hand, defendant spent much time with K.D., took her on vacation, and let her spend time with her older stepsister.
 {¶ 16} The parties' testimony suggest plaintiff and her husband run a slightly "tighter ship" than does defendant. K.D. had specific duties around the Humphrey household, had a specific bedtime, and was required to have her homework done and to eat properly. Although K.D. fought with Sydney and Lucas, the fights appear to be nothing more than typical sibling disputes. Indeed, K.D. sometimes disagreed with her stepsister, defendant's other daughter.
 {¶ 17} The fourth factor under R.C. 3109.04(F)(1)(d) is the child's adjustment to her home, school and community. The testimony from both plaintiff and defendant indicated K.D. was well-adjusted. Plaintiff testified to K.D.'s excelling in school and to her circle of friends in the neighborhood. Defendant as well testified to the group of friends K.D. enjoyed when she visited his home in Reynoldsburg. As the trial court noted, both homes were adequate. While K.D. shared a bedroom at plaintiff's home and had her own room at her father's, she was well-adjusted to both.
 {¶ 18} Under R.C. 3109.04(F)(1)(e), the court considered the mental and physical health of all persons involved in the situation. Although defendant is currently unemployed due to a work injury and is receiving workers' compensation benefits, he stated the injury did not prevent him from taking care of K.D.
 {¶ 19} The sixth factor the court considered was the parties' willingness to facilitate visitation and companionship rights. R.C.3109.04(F)(1)(f). The court noted defendant believed himself to be more likely to facilitate visitation, but, as the trial court also noted, the record shows both parties cooperated and were flexible in visitation.
 {¶ 20} Lastly, the court considered whether either parent had failed to make child support payments. See R.C. 3109.04(F)(1)(g). No child support order was in effect, but plaintiff admitted defendant paid half the dental bills, half of K.D.'s school clothes, half of her doctor bills if plaintiff requested it, and he further gave her $10 a week for lunch.
 {¶ 21} Considering those factors, the trial court quite reasonably determined "the factors are nearly evenly divided in favor of each parent. Plaintiff and Defendant each provide [K.D.] with a loving home. She has solid relationships with both of her parents, with her siblings, her paternal grandmother, and her stepfather. She has friends at each of her parents' homes. [K.D.] is described by both parties as a good-natured, intelligent, well-adjusted, and happy girl. * * * She excels academically in her current school and has many friends there." (Decision, 7.)
 {¶ 22} As the trial court further noted, each parent provided something unique. Plaintiff and her husband provided a structured home with discipline designed to instill responsibility in K.D. At plaintiff's home, K.D. had limitations about bedtime and movies she could watch. Defendant, likewise, provided K.D. with a loving, but slightly less rigid environment. Defendant permitted K.D. to stay up until she was ready for bed and allowed her to watch R-rated, scary movies. The court observed, however, that K.D.'s grades had improved since visitation with defendant was changed to every other weekend.
 {¶ 23} Given the overall picture, the trial court determined, as the guardian ad litem recommended following the in camera interview of K.D., that K.D. should remain with her mother. Because all factors were nearly equal between the two parents, the trial court found no reason to uproot K.D. from her mother's residence, especially in light of her improved academic progress while she was living with plaintiff. Nonetheless, recognizing the valuable relationship K.D. has with her father and fun-loving environment in which visitation with him places her, the court did not retreat from the liberal visitation the magistrate suggested.
 {¶ 24} In the final analysis, K.D. is most fortunate to have two families so devoted to her and dedicated to seeing that she continues to be the well-adjusted, fun-loving, intelligent person that she is. On these facts, the trial court did not abuse its discretion in determining plaintiff should have custody of K.D. The trial court, after fully weighing all of the R.C. 3109.04(F) factors, reached a reasonable decision that is in the best interest of K.D. Accordingly, defendant's single assignment of error is overruled, and the judgment of the trial court is affirmed.
Judgment affirmed.
Petree, P.J., and Sadler, J., Concur.