OPINION
{¶ 1} This is an appeal from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations allocating parental rights and responsibilities for the care of the minor child of plaintiff-appellee, Elizabeth J. Kellogg, and defendant-appellant, Theodore J. Kellogg.
 {¶ 2} Plaintiff and defendant were married on December 15, 1985. The marriage produced one child, Bret, born October 15, 1991. In August 2001, plaintiff filed a complaint for divorce which included a request that she be designated Bret's residential parent and legal custodian. In September 2001, defendant filed an answer and counterclaim for divorce, including a request that he be designated Bret's residential parent and legal custodian.
 {¶ 3} On December 10, 2001, a magistrate issued temporary orders designating both parties as Bret's temporary residential parents and legal custodians. Defendant was designated the residential parent for school placement purposes; plaintiff was granted parenting time with Bret pursuant to Loc. R. 27 of the Court of Common Pleas of Franklin County, Domestic Relations Division ("Loc. R. 27") with the modification that she have overnight possession every Tuesday and Thursday. This schedule was exercised yearround.
 {¶ 4} On June 30, 2003, defendant filed a motion requesting shared parenting, along with a proposed shared parenting plan. By agreed magistrate's order, Rhonda Lilley, Ph.D., was ordered to perform psychological evaluations of both parties and Bret. A guardian ad litem was appointed for Bret. Trial on the issue of the allocation of parental rights and responsibilities was held in October and November 2003. At defendant's request, the trial court interviewed Bret in chambers regarding his wishes and concerns with respect to the allocation.
 {¶ 5} Following trial, the trial court issued a Judgment Entry/Decree of Divorce on March 12, 2004, which incorporated the parties' previously filed agreed judgment entry resolving all issues relating to property division and spousal support. The trial court designated plaintiff as Bret's residential parent and legal custodian. Defendant was granted parenting time in accordance with Loc. R. 27 with the modification that defendant's alternating weekend would conclude on Monday morning at 8:00 a.m. and that his Wednesday parenting time would conclude at 8:00 a.m. on Thursday morning. The court also determined that if Bret was not in school the Friday before defendant's alternating weekend, and if defendant was available to care for Bret, defendant's weekend would begin at 8:00 a.m. on Friday. The summer and holiday provisions of Loc. R. 27 were incorporated into the decree with the provisions that if Bret attended a "sleep-away" camp, the parties would divide the remaining summer parenting time equally between them and that defendant was entitled to a particular week each summer with Bret during his parenting time.
 {¶ 6} Defendant appeals from the March 12, 2004 judgment, advancing one assignment of error for our review:
The trial court erred as a matter of law by failing to determine the wishes and concerns of the minor child as required by R.C. 3109.04(B).
 {¶ 7} Defendant's assignment of error contends the trial court did not comply with the requirements of R.C. 3109.04(B)(2) in allocating parental rights and responsibilities between the parties. More specifically, defendant argues the procedure employed by the trial court during the court's interview of Bret failed to ascertain his wishes and concerns as to the allocation of parenting time between his parents. Defendant further contends the trial court failed to journalize its findings of fact regarding Bret's wishes and concerns as to the division of parenting time.
 {¶ 8} Initially, we note that an appellate court will not reverse a trial court's decision allocating parental rights and responsibilities when the record contains substantial competent, credible evidence to support the court's decision. Dannaher v. Newbold, Franklin App. No. 03AP-155, 2004-Ohio-1003, at ¶ 62. Furthermore, a reviewing court must afford the utmost deference to a trial court's decision regarding the allocation of parental rights and responsibilities Id. As such, absent an abuse of discretion, a reviewing court will not reverse a trial court's decision regarding the allocation of parental rights and responsibilities. Id. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140. In applying the abuse of discretion standard of review, this court may not merely substitute its judgment for that of the trial court. Dannaher, supra. However, the trial court's discretion must be exercised in a manner which best protects the interest of the child. Bodine v. Bodine (1988), 38 Ohio App.3d 173,175, 628 N.E.2d 973.
 {¶ 9} Pursuant to R.C. 3109.04(A), a trial court is authorized to allocate parental rights and responsibilities in domestic relations actions. Ruark v. Smith, Franklin App. No. 03AP-498, 2003-Ohio-6831, at ¶ 10. R.C. 3109.04(B) requires that in making such allocation, the trial court must consider that which would be in the child's best interest. In ascertaining the child's best interest, the court, in its discretion may, and, upon the request of either party shall, interview the child. R.C. 3109.04(B)(1). In addition, in cases in which the court is asked to determine whether shared parenting is in the child's best interest, the court must consider all relevant factors, including those set forth in R.C. 3109.04(F)(1) and (F)(2). Among the factors to be considered under R.C. 3109.04(F)(1) is the child's wishes and concerns as to the allocation of parental rights and responsibilities as expressed to the court during the court's interview of the child. R.C. 3109.01(F)(1)(b).
 {¶ 10} At issue in the instant case is the procedure employed by the trial court in interviewing Bret pursuant to R.C. 3109.04(B)(2), which provides:
(2) If the court interviews any child pursuant to division (B)(1) of this section, all of the following apply:
(a) The court, in its discretion, may and, upon the motion of either parent, shall appoint a guardian ad litem for the child.
(b) The court first shall determine the reasoning ability of the child. If the court determines that the child does not have sufficient reasoning ability to express the child's wishes and concerns with respect to the allocation of parental rights and responsibilities for the care of the child, it shall not determine the child's wishes and concerns with respect to the allocation. If the court determines that the child has sufficient reasoning ability to express the child's wishes or concerns with respect to the allocation, it then shall determine whether, because of special circumstances, it would not be in the best interest of the child to determine the child's wishes and concerns with respect to the allocation. If the court determines that, because of special circumstances, it would not be in the best interest of the child to determine the child's wishes and concerns with respect to the allocation, it shall not determine the child's wishes and concerns with respect to the allocation and shall enter its written findings of fact and opinion in the journal. If the court determines that it would be in the best interests of the child to determine the child's wishes and concerns with respect to the allocation, it shall proceed to make that determination.
(c) The interview shall be conducted in chambers, and no person other than the child, the child's attorney, the judge, any necessary court personnel, and, in the judge's discretion, the attorney of each parent shall be permitted to be present in the chambers during the interview.
 {¶ 11} The trial court interviewed Bret in chambers on November 18, 2003. Bret was twelve years old at the time of the interview. The guardian ad litem was present and, at the court's request, took an active role in interviewing Bret. Initially, the court and guardian ad litem questioned Bret about school and his friendships. The court and guardian ad litem then explained to Bret that he was being interviewed for the purpose of ascertaining his thoughts and opinions concerning the parenting schedule. The court noted that under the current schedule, Bret was alternating almost daily between his parents' homes. When the court asked Bret what he thought about that situation, he responded that he was "kind of irritated or annoyed." (Vol. III, 179). When the court suggested that Bret must feel a little bit like a "yo-yo," Bret agreed, describing the situation as "back and forth, back and forth." (Id.) Bret acknowledged that he had previously told the guardian ad litem that he wanted to see both parents, but the daily change of residences was unacceptable. (Vol. III, 180).
 {¶ 12} Following a rather lengthy discussion about the extracurricular activities in which Bret was involved, the court asked Bret what parenting schedule he would prefer. Before Brett was given the opportunity to respond, the guardian ad litem reminded Bret that in previous discussions he had stated that he did not want to continue with the current daily alternation schedule and that he wanted to spend longer periods of time with each parent. The guardian ad litem further interjected that he had already proposed a schedule to the court. Following a discussion between the court and the guardian ad litem as to the details of the proposed schedule, the guardian ad litem asked Bret if he wished to articulate his position. Before Bret could respond, the court told Bret that he was not required to express a preference and that the court could make a decision based upon his past assertions. The court then asked Bret if he had friends whose parents were divorced, and if so, whether any of the parenting arrangements involving those friends might be suitable for his situation. Bret asserted that the parenting schedule imposed upon a friend would not be suitable for him because in that case, the friend did not like his mother. In contrast, Bret asserted that he loved both his parents and enjoyed spending time with both of them.
 {¶ 13} The court then asked Bret what type of schedule would work for him. Bret responded that he would like to see both parents, but "not like every day — back and forth." (Id. at 189). The court then asked Bret how he would respond to a schedule that provided more time with one parent than the other during the school year, but provided equal time with each parent during the summer. Noting that plaintiff had greater flexibility in her work schedule than did defendant, the court asked Bret "if that were the case and I had to, I guess, pick a larger chunk of time with one parent do you have a preference on who that might be? (Id.) Bret responded, "[p]robably my mom." (Id. at 190).
 {¶ 14} Defendant essentially contends that the court and the guardian ad litem failed to ascertain from Bret exactly how much time he would like to spend with each parent. Defendant maintains that Bret was never given the opportunity to independently express his wishes and concerns as to the parenting schedule because he was asked questions about his preferences in such a way as to suggest particular answers. Defendant further contends the trial court should have presented Bret with several alternatives for parenting time, including spending equal time with each parent, rather than proposing only the alternative that he spend more time with one parent than the other.
 {¶ 15} This case is similar to Inscoe v. Inscoe (1997),121 Ohio App.3d 396, 700 N.E.2d 70. In that case, the appellant challenged the trial court's conduct of the R.C. 3109.04(B)(2) interview, complaining that the trial court never asked the child the ultimate question regarding whether he would prefer to live with his mother or his father. The appellant contended that R.C. 3109.04(B) required the trial court to ask the child the ultimate question. TheInscoe court disagreed, stating:
* * * The statute merely requires trial courts to interview children "regarding their wishes and concerns with respect to the allocation" of parental rights and responsibilities. The statute does not require trial courts to ask any particular questions or employ any particular method of questioning the children. In Baldwin's Ohio Domestic Relations Law (1991), 375, Section 15.05(C), the author observed:
`R.C. 3109.04 does not set forth a procedure to be followed in determining the child's wishes and concerns and does not specify when the interview should be conducted. These matters are left to the discretion of the trial court.'
We find no abuse of discretion in the case sub judice. The trial court's method of questioning the child did not violate the letter or the spirit of the statute. The trial court asked questions sufficient to ascertain the child's wishes and concerns with respect to the allocation of parental rights and responsibilities. The trial court not only asked the child a series of questions about what one thing the child would change in his life to make his life better, the trial court also asked the child detailed questions about the time he spends with each parent. Hence, we find no merit to appellant's contention with regard to the trial court's conduct of the in camera interview.
 {¶ 16} As in Inscoe, we find no abuse of discretion in the procedure employed by the trial court in interviewing Bret. At the time of the interview, the trial court was aware from previous discussions with the guardian ad litem that Bret was dissatisfied with the existing parenting schedule. When the trial court questioned Bret about his concerns, Bret revealed that he was frustrated by the daily change of residence. The trial court asked Bret detailed questions about the time he spent with each parent. The court also asked him with which parent he would prefer to spend the greater amount of time, and he responded that he would prefer to be with his mother.
 {¶ 17} Contrary to defendant's contention, R.C. 3109.04(B) does not require a trial court to ask the child how much time he or she would like to spend with each parent or to present the child with alternative parenting schedules from which to choose. The statute does not specify a particular course of action to be followed by the trial court during the interview, nor does it require the court to ask specific questions or pose questions in a particular manner. It is the duty of the courts of Ohio to give effect to the words used in a statute, not to delete words used or to insert words not used. State v. White, 108 Ohio St.3d 580,817 N.E.2d 393, 2004-Ohio-5989, at ¶ 14. We are therefore left to infer from the General Assembly's silence as to the process to be utilized by a trial court in conducting the interview that the trial court may employ any reasonable method of questioning the child, as long as that method does not violate the letter or the spirit of the statute.
 {¶ 18} Defendant's reliance on Schottenstein v. Schottenstein (Nov. 29, 2001), Franklin App. No. 00AP-1088, is misplaced. In that case, the trial court failed to personally interview the children in chambers, instead viewing a conversation between a magistrate and the children as fulfilling the trial court's responsibility to consider the wishes and concerns of the children. This court determined that the trial court's refusal to meet with the children was inconsistent with both the letter and the spirit of R.C. 3109.04. In this case, it is undisputed, and the record clearly reflects, that the trial court interviewed Bret in chambers as required by R.C. 3109.04; it is only the procedure employed by the trial court during that interview that is challenged. Accordingly, Schottenstein is inapposite.
 {¶ 19} Further, a child's wishes are not controlling upon the trial court and are only one of among several factors a trial court considers when determining what is in the child's best interest. In re Bradford,
Franklin App. No. 01AP-1151, 2002-Ohio-4013, at ¶ 49. See, also,Schottenstein, supra ("[w]e affirmatively draw the distinction between determining the wishes/concerns of the children and following the wishes/concerns of the children in making the allocation of parental rights and responsibilities in the divorce decree."). Here, the trial court delineated its findings with regard to each of the statutory factors set forth in R.C. 3109.04(F)(1), including R.C. 3109.04(F)(1)(b), in determining that shared parenting would not be in Bret's best interest and that Bret's best interest would be served by designating plaintiff his residential parent and legal custodian. The court found that Bret had a good relationship with his parents, that he loved and wanted to spend time with both of them, but that he had grown weary of the current parenting schedule, which required too much back and forth time per week. The court also found that Bret indicated that if required to choose with whom he would prefer to spend more time, he would probably choose his mother.
 {¶ 20} Finally, we note that the evidence at trial was sufficient to support the trial court's ultimate finding regarding the allocation of parental rights and responsibilities. The guardian ad litem recommended that Bret's best interest would be served by designating plaintiff his sole residential parent and legal custodian and that shared parenting was not in Bret's best interest because defendant does not promote Bret's relationship with plaintiff and does not communicate well with her regarding Bret. The expert psychologist also opined that it was in Bret's interest for plaintiff to be the sole residential parent, that shared parenting was not in Bret's best interest, that defendant neither promotes Bret's relationship with plaintiff nor communicates well with her regarding Bret, and that defendant is rigid, inflexible and does not encourage Bret's independence.
 {¶ 21} Defendant also argues that the trial court erred in failing to set forth a finding of fact as to Bret's wishes and concerns regarding the division of parenting time between the parties. This court, inButland v. Butland (June 27, 1996), Franklin App. No. 95APF09-1151, discussed a trial court's obligations regarding written findings under R.C. 3109.04(B)(2)(b):
* * * [T]hat subsection requires a trial court to make written findings of fact only when the court determines a child has sufficient reasoning ability to express his or her wishes and concerns with respect to the allocation of parental rights, but because of "special circumstances" it would not be in the best interest of the child to determine those wishes and concerns. If the court determines that no such special circumstances exist and it would be in the child's best interest to determine his or her wishes and concerns, the court is to proceed to make that determination, but it is not required under R.C. 3109.04(B)(2)(b) to make written findings of fact to support those conclusions.
 {¶ 22} Pursuant to Butland, the trial court was not required to enter written findings concerning Bret's wishes and concerns. Further, assuming arguendo, that the court was required to make such findings, we have previously noted that the court entered specific findings as to Bret's wishes and concerns.
 {¶ 23} For the foregoing reasons, defendant's sole assignment of error is overruled. The judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, is hereby affirmed.
Judgment affirmed.
Lazarus, P.J., and French, J., concur.