OPINION
{¶ 1} Plaintiff-appellant, Stacey Charice Jackson ("Jackson"), appeals the August 22, 2003 judgment entry of the Lake County Court of Common Pleas, Juvenile Division, designating Timothy W. Herron ("Herron") residential parent and legal custodian of their child and finding Jackson in contempt of court. For the following reasons, we affirm the decision of the lower court.
 {¶ 2} On April 1, 1997, Jackson filed a complaint to establish a parent-child relationship between Herron and Alexander Solomon Herron ("Alexander"), born June 21, 1994. Herron's paternity of Alexander had previously been established by genetic testing. Herron did not contest paternity and moved for custody of Alexander. On December 24, 1997, the court granted custody of Alexander to Jackson, granted Herron visitation, and ordered Herron to pay child support.
 {¶ 3} Herron subsequently filed numerous motions, including motions for contempt and change of custody. Jackson filed a motion for attorney fees. Hearings were held on these motions between September 17, 1999, and December 3, 1999. The court found that Jackson had willfully denied Herron visitation with Alexander and that Herron had violated the order to pay child support. The court determined that although a change of circumstances had occurred warranting a change in custody, a change in custody would not be in Alexander's best interests. Accordingly, on August 31, 2000, the court denied Herron's motions for contempt and for change of custody and Jackson's motion for attorney fees.
 {¶ 4} Herron continued to file motions throughout the year 2000 based on Jackson's alleged denial of visitation and denial of access to Alexander's school and medical records. On January 16, 2001, Herron again filed a motion for change of custody. On July 24, 2001, Herron filed a motion to hold Jackson in contempt. Hearings on these motions began on November 21, 2000, and continued through August 22, 2001. On October 3, 2001, Jackson again moved for attorney fees. The court issued its decision on December 5, 2001. Again, the court denied all motions. The court noted that "no change of circumstances ha[s] been demonstrated, but instead the prior untenable circumstances have continued," i.e. the "mother has demonstrated a flagrant disregard for Court orders." Therefore, the court ordered Jackson to notify Herron "within three days" of any changes in Alexander's address, phone number, or schooling and to provide Herron with "[i]nformation regarding any school conferences, events, or other social or sporting events in which Alexander participates" and "any medical or dental care provided to Alexander." The court concluded that it was "instituting new orders in an effort to advise each party what is expected of them, and advise[d] the parties that no deviation will be accepted."
 {¶ 5} On January 15, 2002, Herron filed a motion for change of custody, among other motions. On August 2, 2002, the parties signed an agreed judgment entry and order. The agreed judgment entry dismissed all Herron's motions regarding contempt, show cause, and impeachment. Herron's motion for change of custody was "held in abeyance," but would be set for hearing in the event of "[a]ny material noncompliance of the terms of this Court Order by the mother." Jackson entered an admission that she had violated the court's December 5, 2001 judgment entry. The court found Jackson in contempt and sentenced her to serve an indefinite term of incarceration and pay a $1,000 fine. Jackson's sentence was suspended "conditioned upon the mother purging herself of contempt by her continuing Strict Compliance with the prior Orders of this Court and this Order." Among the particulars of the August 2, 2002 judgment entry, Jackson and Herron were required to cooperate in establishing a "common best interests plan" for Alexander. Jackson was required to share any information regarding Alexander's extra-curricular activities with Herron immediately as such information was available; to refrain from the use of tobacco in Alexander's presence; to refrain from inflicting "excess corporal punishment" on Alexander; to provide Alexander with "absolute privacy" during telephone visitation with his father; and to refrain from making derogatory comments about Herron or his spouse.
 {¶ 6} On October 24, 2002, Herron filed motions to show cause for violations of the August 2, 2002 judgment entry, to return his previous motion to change custody to the court's docket, to combine the hearings for show cause and change of custody, and to allow Alexander to testify as a witness. On December 9, 2002, a review hearing was held at which time the trial judge and guardian ad litem conducted an in camera interview with Alexander. Hearings on Herron's motions to show cause and for change of custody were held on March 10, May 5, July 21, and July 25, 2003. A second in camera interview with Alexander was held on July 25, 2003.
 {¶ 7} On August 22, 2003, the trial court issued its decision granting Herron's motion to change custody and finding Jackson to be in contempt. The court noted in its judgment entry that its findings relative to the motion to change custody are based on facts occurring after the December 5, 2001 judgment entry, denying Herron's prior motion for custody and that its findings relative to the father's motion for contempt are based on facts occurring after the August 2, 2002 agreed judgment entry.
 {¶ 8} After making several pages of factual findings, the court stated its conclusions of law: "The mother has consistently and relentlessly interfered with visitation * * * totally rejecting the importance to the child of frequent and continuing contact with both parents. This is the key factor in this casejustifying the modification of custody. * * * Another key factor in this case is the mother's constant undermining of the father in the eyes of the child, by the making derogatory comments against him and his wife[.] * * * The child's age [nine years old] * * * allows some weight to be given to his preference to live with his father. * * * There is competent evidence in this case that the mother on a not-infrequent basis punches the child in the stomach in anger or for purposes of discipline. There is competent evidence in the record that the physical living arrangements at the home of both parents are suitable and appropriate. * * * The mother has smoked and allowed other persons to smoke in the presence of the child, thereby subjecting him to the substantial health dangers from secondhand smoke. The fact that the child has respiratory problems compounds the danger exponentially. * * * The child's relationship with the father's wife Nicole and siblings is good, while his relationship with the mother's significant other is not so good. * * * The father in this case has much more time available to spend with the child, having a job that is more flexible than the mother. He also has the willingness to spend a great deal of time with the child in various activities that will benefit the child. * * * The father is more willing and able to spend time addressing the child's school and physical conditioning needs."
 {¶ 9} Jackson timely appeals and raises the following assignments of error:
 {¶ 10} "[1.] The trial court committed reversible error when it used unsworn testimony from in camera interviews of the minor child as evidence in its findings of fact in violation of appellant's due process right to cross-examination.
 {¶ 11} "[2.] The trial court's decision transferring custody of the minor child from appellant to appellee constitutes an abuse of discretion."
 {¶ 12} Ohio's Revised Code provides that a "court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree, * * * that a change has occurred in the circumstances of the child [or] the child's residential parent * * * and that the modification is necessary to serve the best interest of the child." R.C.3109.04(E)(1)(a). "In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and * * * [t]he harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child." R.C.3109.04(E)(1)(a)(iii).
 {¶ 13} "The discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." Miller v. Miller
(1988), 37 Ohio St.3d 71, 74. "[T]he discretion of the trial court is not unlimited, but is subject to reversal upon the basis of a showing of abuse of discretion." Baxter v. Baxter
(1971), 27 Ohio St.2d 168, 172-173 (citation omitted). "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219 (citations omitted).
 {¶ 14} In her first assignment of error, Jackson argues that the trial court violated her rights to procedural due process by conducting unsworn, in camera interviews with Alexander and relying upon that information as evidence in its findings of fact and conclusions of law. Jackson alleges that this procedure deprived her of her due process right to confront and cross-examine the witness.
 {¶ 15} We note initially that Jackson has not properly preserved this assignment of error for review by failing to raise the issue before the trial court. Jackson did not object to either of the trial judge's in camera interviews nor did she move to have her attorney present at the interview. State v. Awan
(1986), 22 Ohio St.3d 120, at syllabus ("Failure to raise at the trial court level the issue of the constitutionality of a statute or its application, which issue is apparent at the time of trial, constitutes a waiver of such issue and a deviation from this state's orderly procedure, and therefore need not be heard for the first time on appeal."). We shall, nevertheless, address the substance of Jackson's argument.
 {¶ 16} A court's authority to conduct in camera interviews with children who are the subject of custody proceedings is conferred by statute. "In determining the child's best interest for purposes of making its allocation of the parental rights and responsibilities for the care of the child and for purposes of resolving any issues related to the making of that allocation, the court, in its discretion, may * * * interview in chambers any or all of the involved children regarding their wishes and concerns with respect to the allocation." R.C. 3109.04(B)(1). "The interview shall be conducted in chambers, and no person other than the child, the child's attorney, the judge, any necessary court personnel, and, in the judge's discretion, the attorney of each parent shall be permitted to be present in the chambers during the interview." R.C. 3109.04(B)(2)(c). Trial courts are required "to make a record of any in camera interview with children involved in custody proceedings, * * * [to] ensure that an appellate court can effectively review the trial court's decision pertaining to custody matters." Donovan v. Donovan
(1996), 110 Ohio App.3d 615, 620; Patton v. Patton (1993),87 Ohio App.3d 844, 846.
 {¶ 17} The purpose of having the trial judge conduct in camera interviews is to provide children with a forum for openly discussing their concerns and preferences regarding their own custody. Patton v. Patton (Jan. 9, 1995), 5th Dist. No. 94 CA 40, 1995 Ohio App. LEXIS 357, at *9 ("children should display candor in setting forth their feeling under the circumstances and conditions set forth [in the statute]"). The advantages of in camera interviews have been recognized by appellate courts. "Domestic relations judges typically use the in-camera interview to discuss a wide variety of issues, including any problems the child may be having with parents, step-parents, siblings, etc. In this way, the judge can identify areas of potential trouble, and may discover, inter alia, that the intervention of a social worker is necessary, or that a new hearing on visitation should be held. We believe that judges should be allowed to keep their private conversations with the children * * * confidential, as many times it is only this promise of confidentiality that convinces these embattled children to speak freely." In reLongwell (Aug. 30, 1995), 9th Dist. Nos. 94 CA 006006 and 94 CA 006007, 1995 Ohio App. LEXIS 3825, at *11; accord Willis v.Willis, 149 Ohio App.3d 50, 2002-Ohio-3716, at ¶¶ 20-26.
 {¶ 18} In the present case, the validity of these purposes is well-demonstrated. In its August 22, 2003 judgment entry, the court noted that Alexander was initially reluctant to answer the court's questions. "To motivate the child to be candid" during the interviews, the court assured Alexander that the content of the discussions would be "confidential," although such confidentiality might not be preserved on appeal. The court further noted that Alexander was "forthright and honest" in his answers, that, although the interviews were conducted several months apart, Alexander's answers to the same questions were consistent, and that Alexander "had no hesitation in making his custody preference [for] his father known" but did not disparage either parent or appear to exaggerate the facts in an attempt to influence the court.
 {¶ 19} Jackson's due process challenge relies on the Ohio Supreme Court's decision in In re Hoffman, 97 Ohio St.3d 92,2002-Ohio-5368. In Hoffman, the court held "[i]n a permanent custody proceeding in which the guardian ad litem's report will be a factor in the trial court's decision, parties to the proceeding have the right to cross-examine the guardian ad litem concerning the contents of the report and the basis for a custody recommendation." Id. at syllabus.
 {¶ 20} Hoffman is distinguishable in two significant respects. The first is that Hoffman was a permanent custody proceeding, i.e. a proceeding to permanently terminate a parent's fundamental right to the care and custody of their children. Such proceedings have infamously been referred to as "the family law equivalent of the death penalty." In re Hayes (1997),79 Ohio St.3d 46, 48 (citation omitted). The present proceeding concerns the determination of which parent will be Alexander's "residential parent and legal custodian." As the lower court observed in its judgment entry, custody orders are "of temporary nature * * * and never final." Jackson still enjoys visitation with Alexander and bears the responsibility of participating in Alexander's upbringing.
 {¶ 21} Hoffman is also factually distinguishable. At issue in that case was the trial court's reliance on the guardian ad litem's report and recommendation as evidence in making its final determination. In the present case, Alexander's guardian ad litem did not make any report or recommendation regarding Alexander's custody. The guardian was present during the in camera interviews and asked a few questions of Alexander. Beyond this, the guardian contributed nothing to the factual record of this case and there is no indication that the trial court's decision was affected in any way by the guardian's involvement. It was the trial judge, not the guardian, who conducted the in camera interview. Thus, the trial judge personally observed Alexander's responses and made his own conclusions regarding the weight and credibility of the testimony. Cf. Evid.R. 614(B) ("[t]he court may interrogate witnesses, in an impartial manner"); In re Disqualification ofKilpatrick (1989), 47 Ohio St.3d 605, 606 ("[a] judge is presumed to be fair and impartial").
 {¶ 22} The Hoffman court recognized that procedural due process often eludes precise definition and that its application is an exercise in "discover[ing] what `fundamental fairness' consists of in a particular situation." 2002-Ohio-5368, at ¶ 17, quoting Lassiter v. Dept. of Social Serv. of Durham Cty., NorthCarolina (1981), 452 U.S. 18, 24-25. "The statute [R.C.3109.04(B)] does not specify a particular course of action to be followed by the trial court during the interview, nor does it require the court to ask specific questions or pose questions in a particular manner." Kellogg v. Kellogg, 10th Dist. No. 04AP-382, 2004-Ohio-7202, at ¶ 17. Therefore, "the court may employ any reasonable method of questioning the child, as long as that method does not violate the letter or the spirit of the statute." Id. Contrary to Jackson's position, there was no fundamental unfairness in the manner in which the court received Alexander's testimony. The court's questioning of Alexander covered issues related to Alexander's preference regarding his custody and Alexander's best interest. The subjects of the court's discussion with Alexander were the same as those raised and discussed in open court during the hearings. Jackson cannot claim that the court introduced any new matters into its deliberations as a result of the interviews with Alexander.
 {¶ 23} For the foregoing reasons, Jackson's first assignment of error is without merit.
 {¶ 24} Under her second assignment of error, Jackson makes two arguments. The first is that the trial court erred in its finding that a change of circumstances had occurred by considering evidence outside the relevant dates for the purposes of Herron's January 15, 2002 motion to change custody. According to Jackson, the relevant dates for determining a change of circumstances were from January 15, 2002, until the date of hearings. We disagree.
 {¶ 25} In its August 22, 2003 judgment entry, the trial court stated that the relevant time period for determining whether a change of circumstances occurred began with the court's prior judgment entry of December 5, 2001, denying Herron's previous motion for custody. The trial court's definition of the relevant time period comports with the provision of the Revised Code, which states that the change of circumstances must be "based on facts that have arisen since the prior decree." R.C.3109.04(E)(1)(a). Jackson is incorrect that the trial court may only consider facts arising after the date a motion for change of custody is made.
 {¶ 26} "In determining whether a change in circumstances has occurred so as to warrant a change in custody, a trial judge, as the trier of fact, must be given wide latitude to consider all issues which support such a change." Davis v. Flickinger,77 Ohio St.3d 415, 1997-Ohio-260, at paragraph two of the syllabus. The history of the present case demonstrates that at no time
has Jackson fully complied with the court's orders regarding visitation. It is well-established that interference with the noncustodial parent's visitation rights may constitute a change of circumstances warranting a change of custody. See, e.g., Inre Seitz, 11th Dist. No. 2002-T-0097, 2003-Ohio-5218, at ¶ 39 (citations omitted); Hinton v. Hinton, 4th Dist. No. 02CA54, 2003-Ohio-2785, at ¶ 13 (citations omitted). As the trial judge noted, visitation is not merely a privilege of the noncustodial parent, it is "a fundamental right of the child." The fact that Jackson's interference is not a "new" circumstance of this case does not preclude the trial court from basing its decision to change custody on that interference.
 {¶ 27} Finally, Jackson argues that the trial court abused its discretion by admitting evidence in violation of the Ohio Rules of Evidence and of Civil Procedure. Counsel for Jackson objected repeatedly during the four days of hearings on a variety of grounds, including the admission of documentary evidence, the scope of direct and cross-examination, hearsay statements, lack of foundation, and relevancy.
 {¶ 28} The trial court's discretion to admit or exclude evidence is broad "so long as such discretion is exercised in line with the rules of procedure and evidence." Rigby v. LakeCty. (1991), 58 Ohio St.3d 269, 271. When a matter is tried before the court in a bench trial, there is a presumption that the trial judge "considered only the relevant, material, and competent evidence in arriving at its judgment unless it affirmatively appears to the contrary." State v. White (1968),15 Ohio St.2d 146, 151; Columbus v. Gunthmann (1963),175 Ohio St. 282, paragraph three of the syllabus.
 {¶ 29} In the present case, the trial court's conduct and final judgment support the conclusion that only relevant, admissible evidence was considered. The trial court granted Jackson's motion to exclude Herron's exhibits that were not properly marked or introduced at trial. The trial court also upheld Jackson's objections to those portions of Herron's closing argument "to the extent [that] any matters discussed in that closing argument * * * were outside the record." Assuming that inadmissible testimony was introduced during the hearings, Jackson does not allege that any of the trial court's findings of fact are unsupported by other, admissible evidence. Rather, Jackson broadly asserts that "the cumulative effect of all this inadmissible evidence constitutes an abuse of discretion." Given the presumption that the trial judge only considered admissible evidence, the fact that the court excluded exhibits not properly admitted and argument beyond the scope of the record, and that the trial court's conclusions, particularly regarding violation of the court's prior orders, are supported by other, admissible evidence, we find no abuse of discretion in the trial court's conduct of the hearings. Kellogg, 2004-Ohio-7202, at ¶ 20 (affirming the lower court's decision where "the evidence at trial was sufficient to support the trial court's ultimate finding regarding the allocation of parental rights and responsibilities").
 {¶ 30} Jackson's second assignment of error is without merit.
 {¶ 31} For the foregoing reasons, the decision of the Lake County Court of Common Pleas, Juvenile Division, transferring custody of Alexander from Jackson to Herron is affirmed.
Ford, P.J., Rice, J., concur.