[Cite as *Beard v. Bloomfield*, 2012-Ohio-2133.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## WYANDOT COUNTY


DAMIAN BEARD,

    PLAINTIFF-APPELLEE,

    v.                                  CASE NO.  16-11-09

BRENDA BLOOMFIELD,

    DEFENDANT-APPELLANT,
    -and-

                                       **O P I N I O N**

WYANDOT COUNTY JOB AND
FAMILY SERVICES, ET AL.,

    DEFENDANTS-APPELLEES.


**Appeal from Wyandot County Common Pleas Court**
**Juvenile Division**
**Trial Court No. I 2103032**

**Judgment Affirmed**

**Date of Decision:   May 14, 2012**


**APPEARANCES:**

    *John C. Filkins*  for Appellant

    *Dennis E. Pfiefer*  for Appellee, Damian Beard

**WILLAMOWSKI, J**.

{¶1} Defendant-Appellant, Brenda Bloomfield ("Brenda" or "the Mother"), appeals the judgment of the Wyandot County Court of Common Pleas, Juvenile Division, designating Plaintiff-Appellee, Damian Beard ("Damian" or "the Father") as the residential parent of the unmarried couple's young daughter, and assigning other parental rights and responsibilities. On appeal, Brenda contends that the trial court erred: in admitting a supplemental guardian ad litem report into evidence after the conclusion of the hearing; in awarding custody to the Father; in not providing the Mother with additional parenting time; and, when the judge did not recuse herself due to an alleged conflict. For the reasons set forth below, the judgment is affirmed.

{¶2} Damian and Brenda are the parents of a young daughter, Riley, who was born in January of 2009. The parties were never married, although they were in a relationship and resided together in a home they both owned in Carey, Ohio, along with Riley and Brenda's two children from a previous marriage. Paternity was not in dispute, and both parties acknowledged Damian was the father of Riley. The parties' relationship was very tumultuous, and Damian vacated the home in March of 2010, while Riley remained in the parties' home with Brenda.

{¶3} On July 30, 2010, Damian filed a complaint requesting that he be named the residential parent and legal custodian of Riley. Brenda filed an answer

wherein she requested that she be named residential parent and legal custodian. A CASA Guardian Ad Litem ("GAL"), June Hess, was appointed for Riley. A hearing for temporary orders was held, and on September 23, 2010, Brenda, who had been caring for Riley since the separation, was named the temporary residential parent and legal custodian. Damian was afforded the standard parenting time.

{¶4} The conflicts between the parties continued after the separation, with allegations that Damian tried to kick in the doors to the home, and that Brenda might be suicidal and was not in touch with reality. Both parties raised concerns about Riley's care and well-being when with the other parent. During the pendency of the case, both parties alleged domestic violence and filed petitions for civil protection orders.

{¶5} A final hearing was held before a magistrate on December 14, 2010 and February 9, 2011. At the hearing, the trial court heard testimony from Brenda, Damian, Damian's father and mother, Brenda's father, Brenda's boyfriend, Kimberly (a friend/roommate of Brenda), a police sergeant who had been called to Brenda's residence, and the GAL.

{¶6} The GAL filed her report on December 5, 2010, and both parties had the opportunity to review it before the hearing. The GAL testified at the final hearing on February 9, 2011, and both parties cross-examined her. The GAL's

report was detailed and involved numerous interviews with relatives, friends, and various professionals, along with a review of correspondence, and psychological reports and evaluations. The GAL's conclusions were:

> In the GAL's opinion, Riley will be in a better environment with her father, Damian Beard. Damian is very attentive to Riley's every need engaging her in outside activities, fresh air, and age-appropriate play. The GAL witnessed where Riley likes to be held and read to in a rocking chair in Damian's living room. Although the 'farm' house is not updated, all necessities are available on the first floor of the residence. Damian has a more positive, stable outlook in the GAL's opinion. Brenda is very "emotionally charged" and has shown instability in choosing male companions and frequent moving. Brenda does not acknowledge any of her faults in relationships with male companions or others, but rather blames her life's happenings on someone else.

(GAL 12/7/10 Report.) The report recommended that Damian be named the residential parent and legal custodian. It recommended that Brenda have the standard parenting visitation time with Riley, but that she also engage in counseling until successfully released by the counselor. (*Id.*) The GAL again stated this recommendation at the hearing, and also testified that she found Brenda to be uncooperative, untruthful and unstable. (Trans. Vol. 2, pp. 52-55)

{¶7} The parties stipulated that the GAL report be placed "under seal" and submitted to the trial court for review and consideration along with documents provided by Wyandot County Job and Family Services. The trial court received results of the psychological testing that had been ordered and these documents were placed in the trial court's "Social File" and were not subject to public

inspection. Brenda objected to the trial court using the results of the MMPI psychological testing done on her. (Mag. Dec., p. 2) Both parties submitted various exhibits, but these were objected to and none of the exhibits were admitted into evidence.

{¶8} Subsequent to the hearing, the GAL submitted a "Supplemental Report" on March 16, 2011, stating that she "must amend my previously submitted report and take out the information about Mother's current residence. At minimum, I must supplement the report to indicate that I have NO knowledge as to Mother or Riley's current living environment. My previous recommendation remains the same, only stronger." (3/16/11 GAL Suppl. Rpt.) Attached was an affidavit stating that on March 7, 2011, she had received information that Brenda had vacated her residence; that she was unable to locate a new address for Brenda; and that on March 15, 2011, she went to the residence and observed that it had been vacated, with all of the furniture, toys, clothes and food removed. (*Id.*) She further attested that "I do not know where or with whom Riley is residing except when she is with Mr. Beard." (*Id.*)

{¶9} On March 22, 2011, the magistrate filed a lengthy and detailed report containing findings of fact and conclusions of law along with her recommendations. The magistrate concluded that it would be in Riley's best interest that Damian should be designated the residential parent and legal

custodian. The magistrate recommended that Brenda have standard parenting time with Riley.

{¶10} On March 30, 2011, the trial court filed an Interim Order, approving and adopting the magistrate's decision in its entirety and ordering that its terms and conditions take effect. Extensions of time were granted for the filing of objections, pending receipt and review of the transcript of proceedings.[1] The Interim Orders were extended several times before the final judgment entry.

{¶11} On May 6, 2011, Damian requested that the trial court modify companionship, asking that Brenda's companionship with Riley be supervised through Patchworks House. Damian alleged that on March 16, 2011, Brenda pointed a loaded 357 Magnum at him (and at law enforcement officers who had responded) while she was holding Riley. Thereafter, on April 26, 2011, Damian was granted a 5-year Domestic Violence Civil Protection Order ("CPO") by Judge Kelbley in Wyandot County Domestic Relations Case 11-DR-0026. Riley was also named a protected person under this CPO. Damian further requested that the trial court interview the GAL relative to this matter. Brenda filed a motion in opposition.

{¶12} On May 10, 2011, the trial court filed a judgment entry in response to these motions, stating that a hearing on the motions should be scheduled at the

---

[1] Brenda's original attorney withdrew subsequent to the final hearing, and Brenda obtained new counsel.

earliest possible time because: (1) the CPO contained contradictions within it, namely, it granted Brenda visitation with Riley pursuant to the magistrate's decision and yet, it also stated that Brenda was not to be within 500 feet of the protected persons, which included Riley; and, (2) if the GAL has information that is pertinent to the motion, then "due process demands that she be called as a witness and subject to cross examination." (May, 10, 2011 J.E.) A full-day hearing was set for July 12, 2011 before the magistrate.

{¶13} On August 2, 2011, after receiving and reviewing all of Brenda's numerous objections, and Damian's response, the trial court overruled almost all of the objections.[2] The trial court adopted the magistrate's decision and made it an order of the court.

{¶14} The trial court filed its final judgment entry on August 17, 2011.[3] This judgment designated Damian as the residential parent and legal custodian of Riley. Brenda was awarded standard parenting time consistent with the local rules, and was ordered to pay child support.

---

[2] The trial court noted that the few objections that were sustained were inconsequential in nature and did not affect the court's determination of the appropriateness of the magistrate's decision.

[3] The magistrate's decision on the motion to modify parenting time was also filed on August 17, 2011, reporting the magistrate's findings of fact, conclusions of law, and recommendations as a result of the July 12, 2011 hearing on Damian's motion to modify parenting time. The magistrate recommended that Brenda's parenting time with Riley be at Patchworks House, under Level 2 supervision. (*See* Aug. 17, 2011 Mag. Dec.) No objections were filed, and this decision was later adopted and made an order of the court. (*See* Sept. 7, 2011 Judgment Entry)

{¶15} It is from the trial court's August 17, 2011, final judgment entry that Brenda brings this appeal, raising the following four assignments of error for our review.

### First Assignment of Error

**The trial court erred in admitting into evidence, and relying upon, the supplemental guardian ad litem report that was filed after the final hearing because the report did not comply with Superintendence Rule 48 and the report violated [the Mother's] due process rights.**

### Second Assignment of Error

**The trial court's award of custody to [the Father] was against the manifest weight of the evidence and not in the best interest of the minor child.**

### Third Assignment of Error

**The trial court's award of standard parenting time to [the Mother] was against the manifest weight of evidence and not in the best interest of the minor child.**

### Fourth Assignment of Error

**The trial court erred as a result of Judge Kathleen A. Aubry's failure to recuse herself in the present case after she already recused herself from a companion case between the same two parties upon the basis that a conflict existed.**

*First Assignment of Error – Supplemental GAL Report*

{¶16} In the first assignment of error, Brenda complains that the supplemental GAL report contained new facts and evidence that were not testified to at the hearing in this case, and yet they were mentioned and relied upon in the

magistrate's decision. She cites several cases wherein it was considered reversible error when the parties did not have the opportunity to cross-examine a GAL about information submitted in a report.

{¶17} A GAL is appointed to investigate the child's situation in order to make a recommendation to the court regarding the child's best interest. R.C. 3109.04(C); *Ferrell v. Ferrell*, 7th Dist. No. 01AP0763, 2002-Ohio-3019, at ¶ 43, citing *In re Baby Girl Baxter*, 17 Ohio St.3d 229, 232 (1985). However, the ultimate decision is for the trial judge and not a representative of the children. *Warnecke v. Warnecke*, 3rd Dist. No. 12-2000-10, 2001-Ohio-2135. The magistrate, as the trier of fact, is presumed to be capable of both weighing the credibility of the GAL and disregarding any inadmissible findings in the report. *Brunip v. Nickerson*, 7th Dist. No. 07 CO-42, 2008-Ohio-5052, ¶ 65. The court's consideration of a GAL's report does not violate any party's due process rights as long as the party had an opportunity to cross-examine the GAL on issues raised in the report. *In re Hoffman*, 97 Ohio St.3d 92, 2002-Ohio-5368, at ¶ 25.

{¶18} Brenda relies upon the Ohio Supreme Court's holding in the case of *In re Hoffman* and its progeny in support of her position. In *Hoffman,* the Ohio Supreme Court held that, "[i]n a permanent custody proceeding in which the guardian ad litem's report will be a factor in the trial court's decision, parties to the proceeding have the right to cross-examine the guardian ad litem concerning the

contents of the report and the basis for a custody recommendation." *Id.* at the syllabus.[4] The Court further held that "without these safeguards, there are no measures to ensure the accuracy of the information provided and the credibility of those who made the statements." *Id.* at ¶ 25.

{¶19} However, *Hoffman* is distinguishable in at least two important aspects: (1) the parties in *Hoffman* were denied *any* opportunity to question or cross-examine the GAL; and, (2) the case involved a permanent custody proceeding and the termination of parental rights. All of the other cases cited by Brenda in support of her opinion also involved permanent custody proceedings.

{¶20} In a case involving a change of custody between the two parents, similar to the case before us today, the Eleventh District Court of Appeals found that *Hoffman* was distinguishable and not applicable. *See Jackson v. Herron*, 11th Dist. No. 2003-L-145, 2005-Ohio-4046. In *Jackson*, the court of appeals found that: "Hoffman was a permanent custody proceeding, i.e. a proceeding to permanently terminate a parent's fundamental right to the care and custody of their children. Such proceedings have infamously been referred to as 'the family law equivalent of the death penalty.' *In re Hayes,* 79 Ohio St.3d 46, 48, (1997) (citation omitted)." *Jackson* at ¶ 20. The procedural protections are not as critical in a proceeding concerning the determination of which parent will be the child's

---

[4] The Supreme Court was resolving a certified question concerning the application of R.C. 2151.414(C), pertinent to permanent custody proceedings.

"residential parent and legal custodian," as "custody orders are 'of temporary nature * * * and never final,'" and the other parent will still enjoy visitation with the child and will bear the responsibility of participating in the child's upbringing. *Id.  But see*, *Allen v. Allen*, 11th Dist. No. 1009-T-0070, 2010-Ohio-475, ¶¶ 34-40 (finding support for the application of *Hoffman* outside of permanent custody proceedings, in addition to discussing cases which have found *Hoffman* to be factually distinguishable and not applicable.)

{¶21} While the better procedure would have been to either ignore the supplemental report or to have allowed for a renewed cross-examination of the GAL concerning the amended information, we do not find that the submission of the supplemental report in this case was in any way prejudicial or that it affected the outcome of the proceedings for the following reasons.  The information provided was merely an informative, factual statement updating information concerning the address/location of the Mother and child, and did not change the GAL's recommendation.  The original report had already stated that the Mother had a history of moving frequently and recommended that the Father be appointed the residential parent.  The parties had ample opportunity to question the GAL as to her findings and recommendations at the hearing during direct, cross, redirect and re-cross examinations.  (Tr. Vol. II, pp. 42-158)  And, the trial court indicated that it was fully aware of its duty to protect the parties' rights, when it refused to

have any communication with the GAL, or consider any *significant* new facts or modification of her position, without giving the parties the opportunity for a hearing and cross-examination. (*See* May 10, 2011 J.E.).

{¶22} Furthermore, a follow-up hearing *was held* on July 12, 2012. Although it originally appeared as if the GAL would testify at this hearing, only the two parents were witnesses. The magistrate's decision sets forth the following findings concerning the testimony at this hearing, which was held *before* the final judgment entry:

> At the time of the last hearing, [Brenda] indicated she resided at the address of 5796 Township Highway 103, Carey, Ohio. [Damian] believed [Brenda] had vacated that residence. That property is in [Damian] and [Brenda's] name jointly. [Brenda] did not notify [Damian] of a change in address. [Damian] believed [Brenda] vacated the premises as there was no heat on in the premises and it appeared "ransacked" with clothing strewn about and rooms stripped of furniture. Also, there were kitchen appliances missing. [*Brenda*] *admitted to not staying at that residence and described her living arrangements on March 16, 2011 as "in the process of moving to Bluffton."*

(Emphasis added.) (Aug. 17, 2011 Mag. Dec., p. 2) After this hearing, Brenda did file an "Intent to Relocate" on August, 3, 2011, stating that she was moving from the Carey, Ohio address to Bluffton.[5] Therefore, the information that Brenda objects to in the GAL's amended report was before the trial court prior to the final judgment in this case, as a result of Brenda's own testimony.

---

[5] Although the date listed for this move was represented to be "approx. 5-16-2011."

{¶23} Based on the above, if there was any error in the submission of the GAL's supplemental report, we find that it was harmless error and did not provide any information that was not already substantiated by Brenda prior to the final judgment entry. There was no prejudice to Brenda. *See, Mackowiak v. Mackowiak*, 12th Dist. CA 2010-04-001, 2011-Ohio-3013, ¶ 78 (finding that the juvenile court's failure to permit mother to cross-examine the GAL was not prejudicial to mother).

{¶24} Brenda's complaint that she did not have the opportunity to cross-examine the GAL as to the accuracy of the supplemental report was rendered moot when she herself confirmed the accuracy of the report. The first assignment of error is overruled.

*Second Assignment of Error – Custody to Father Against Manifest Weight*

{¶25} In her second assignment of error, Brenda contends that the trial court's decision to name Damian as the residential parent was against the manifest weight of the evidence and was not in the best interest of the child. Brenda maintains that when the evidence is applied to the statutory factors, the decision should have been in favor of Brenda being named the residential and custodial parent.

{¶26} R.C. 3109.04(B)(1) requires a trial court to consider a child's best interests when the trial court allocates parental rights. To determine a child's best

-13-

interests, a trial court must consider the non-exclusive list of factors set forth in R.C. 3109.04(F)(1). *Fricke v. Fricke*, 3d Dist. No. 1-06-18, 2006-Ohio-4845, ¶ 7. R.C. 3104.04(F)(1) states that the court shall consider all relevant factors, including, but not limited to:

> (F)(1) In determining the best interest of a child pursuant to this section, whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to:
>
> (a)   The wishes of the child's parents regarding the child's care;
>
> (b)   If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;
>
> (c)   The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
>
> (d)   The child's adjustment to the child's home, school, and community;
>
> (e)   The mental and physical health of all persons involved in the situation;
>
> (f)   The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;
>
> (g)   Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

(h)   Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; * * *

(i)   Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j)   Whether either parent has established a residence, or is planning to establish a residence, outside this state.

A trial court is not limited to the listed factors in R.C. 3109.04(F), but may consider any other relevant factors in making a determination of child custody. *Shaffer v. Shaffer*, 3d Dist. No. 11-04-22, 2005-Ohio-3884, ¶ 20.

{¶27} A trial court has broad discretion in allocating parental rights, and its decision will not be disturbed on appeal absent an abuse of discretion. *Id.* at ¶ 10, citing *Davis v. Flickinger*, 77 Ohio St.3d 415, 418 1997-Ohio-260; *Siefker v. Siefker*, 3d Dist. No. 12–06–04, 2006–Ohio–5154, ¶ 4. An abuse of discretion is more than an error of judgment; it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When applying the abuse of discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. *Berk v. Matthews*, 53 Ohio St.3d 161, 169 (1990). Furthermore, a reviewing court will not reverse an award of custody that is supported by a substantial amount of

competent, credible evidence as being against the weight of the evidence. *Bechtol*

*v. Bechtol*, 49 Ohio St.3d 21, 23, (1990).

{¶28} The magistrate set forth the facts before the trial court and carefully

analyzed each applicable factor in 3104.04(F)(1) before making her

recommendations. While Brenda is correct in that the facts pertaining to several

of the factors were either neutral, or positive to Brenda, the trial court's findings as

to the significant factors (e), (f), and (j) weighed heavily against Brenda. The

magistrate's report stated:

> (5) The mental health of both parents is concerning, with there being more concern about [Brenda's] mental health than [Damian's]. [Damian] is an alcoholic, currently sober, without any structured support. [Brenda] will not allow the Guardian Ad Litem to talk to her longtime counselor, has an invalid MMPI due to invalid responses, blames others for all the wrongs in her life, continues to enter relationships with "abusive" men. [Brenda] subjects her children to these abusive relationships. As a result of the abuse, real or imaginary, the children have been uprooted and moved. [Brenda] is not truthful [with Dr. McIntyre] * * *. [Brenda] also was uncooperative with the Guardian Ad Litem. [Brenda] has told JFS that she can smell cancer and she has cured her son of cancer. [Brenda] has taken pictures of the child's genitalia, and of her person on numerous occasions. The continuation of this behavior may have a negative impact on the emotional well being of the child.
>
> (6) [Brenda] has denied parenting time to [Damian] prior to the Court Order. * * *
>
> (8) [Brenda] has threatened to move, to Georgia, when she is upset with [Damian]. * * *
>
> (9) [Brenda] moves from relationship to relationship seemingly without pause. She has subjected her children to various men, all of

which [Brenda] claims are abusive. She calls her children demeaning names. She gets physical with her children. * * *

(Mar. 22, 2011 Mag. Dec., pp. 19-21)

{¶29} In determining the best interest of a child under R.C. 3109.04(F)(1), the court has discretion in determining which factors are relevant. *Hammond v. Harm*, 9th Dist. No. 23993, 2008-Ohio-2310, ¶ 51. The factors are merely to provide guidance for the trial court in determining what is in the child's best interest, and each factor may not necessarily carry the same weight or have the same relevance, depending upon the facts before the trial court.

{¶30} Given the seriousness of some of the factors that weighed against the trial court finding that Brenda should be the custodial parent, we do not find that the trial court abused its discretion, or that the decision was against the manifest weight of the evidence. Based on the above, the second assignment of error is overruled.

*Third Assignment of Error – Parenting Time*

{¶31} Brenda asserts that the trial court erred in analyzing the factors under R.C. 3109.051 in addressing parenting time for the non-residential parent. Brenda particularly believes she should have been granted more parenting time with Riley because she is currently unemployed and is available to watch Riley while Damian works.

**{¶32}** The trial court's establishment of a non-residential parent's visitation rights is within its sound discretion, and will not be disturbed on appeal absent a showing of an abuse of discretion. *Fordham v. Fordham*, 3rd Dist. No. 8–08–17, 2009–Ohio–1915, ¶ 18, citing *Appleby v. Appleby*, 24 Ohio St.3d 39, 41 (1986). As stated above, an abuse of discretion connotes that the trial court's attitude was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, *supra.* Additionally, the trier of fact is in the best position to observe the witnesses, weigh evidence, and evaluate testimony. *Clark v. Clark,* 3d Dist. No. 14-06-56, 2007-Ohio-5771, ¶ 23*, citing In re Brown,* 98 Ohio App.3d 337 (1994).

**{¶33}** Pursuant to R.C. 3109.051(D), the trial court shall consider the fifteen factors enumerated in the statute, and in its sound discretion determine visitation that is in the best interest of the child. *Braatz v. Braatz*, 85 Ohio St.3d 40, 44, 1999-Ohio-203; *See, generally, Booth v. Booth*, 44 Ohio St.3d 142, 144 (1989). As it did with the factors in R.C. 3104.04(F) in determining the residential parent, the trial court again listed the facts that were relevant to the applicable factors under R.C. 3109.051(D). Similar to what was found in the previous assignment of error, some of the factors were neutral or were not applicable. However, of particular concern to the trial court in this case were the following factors in R.C. 3109.051(D):

(7) The health and safety of the child;

* * *

(9) The mental and physical health of all parties;

(10) Each parent's willingness to reschedule missed parenting time and to facilitate the other parent's parenting time rights, and with respect to a person who requested companionship or visitation, the willingness of that person to reschedule missed visitation;

* * *

(14) Whether either parent has established a residence or is planning to establish a residence outside this state;

* * *

(16) Any other factor in the best interest of the child.

**{¶34}** The magistrate listed the following concerns as applicable to the

above statutory factors.

The health and safety of the child is a troubling concern as it relates to the mental health of [Brenda]. * * *

[Brenda] does not appear willing to facilitate a relationship between [Damian] and the child. She has called [Damian] the devil, and stated God cursed her with a child with [Damian]. [Brenda's] oldest child is filled with hate for his father. There was no indication [Brenda] would not encourage Riley to hate her father as well. * * *

[Brenda] does harmful things to her children when she is mad. She calls her teenage son names, like retarded, stupid and a dumb ass, and deliberately smokes around them all when she is mad. When she was mad at [Damian] she threatened to move his daughter to Georgia.

(Mar. 22, 2011 Mag. Dec., pp. 21-22)

**{¶35}** While a child's best interest might sometimes be better served by spending extra time with a non-working, non-residential parent while the custodial parent is at work, that is not always the case. Again, given the seriousness of the negative factors in this case, we do not find that the trial court abused its discretion in limiting the amount of parenting time Brenda has with the child. Based on the above, the third assignment of error is overruled.

*Fourth Assignment of Error – Recusal of Judge*

**{¶36}** In the final assignment of error, Brenda submits that because Judge Kathleen Aubry recused herself from Case #11-DR-0026 (*see* ¶ 11 above) wherein Damian requested a CPO, she should have recused herself from all companion cases pending before her between the same parties. Because Brenda claims that Judge Aubry is "conflicted" from presiding over this case, and Judge Aubry appoints her magistrate, she contends that Magistrate O'Connell also has a conflict and lacked jurisdiction to hear the evidence in this case.

**{¶37}** Brenda has not provided any specific facts as to why Judge Aubry might have a conflict with this case, nor does she provide any case law or any citations to the record indicating that Judge Aubry would have a conflict in this case. Damian represents that the reasoning behind Judge Aubry's recusal in the

companion case was because of a conflict that was of very short duration and not applicable to the case at bar.[6]

{¶38} The statute governing disqualification of a judge of common pleas court provides the exclusive means by which a litigant may claim that a common pleas court judge is biased and prejudiced, warranting recusal. R.C. § 2701.03; *Jones v. Billingham*, 105 Ohio App.3d 8, 11 (2d Dist.1995). R.C. 2701.03 sets forth the proper procedures and states that:

> (A) If a judge of the court of common pleas allegedly is interested in a proceeding pending before the court, allegedly is related to or has a bias or prejudice for or against a party to a proceeding pending before the court or a party's counsel, or allegedly otherwise is disqualified to preside in a proceeding pending before the court, any party to the proceeding or the party's counsel may file an affidavit of disqualification with the clerk of the supreme court in accordance with division (B) of this section.

The record does not reflect that Brenda has followed the statutory procedures.

{¶39} Furthermore, an appellate court does not have the authority to review an assignment of error claiming that a judge is biased or prejudiced. *Wiltz v. Clark Schaefer Hackett & Co.*, 10th Dist. Nos. 11AP-64, 11AP-282, 2011-Ohio-6664, ¶ 9. The Chief Justice of the Supreme Court of Ohio, or his designee, has exclusive jurisdiction to determine a claim that a common pleas judge is biased or

---

[6] In his Appellee's Brief, Damian represents that Brenda filed a complaint against Judge Aubry and Sheriff Hetzel in the Upper Sandusky Municipal Court under case number CVI 1100029, just prior to Damian filing his petition for a CPO against Brenda. Damian claims Aubry recused herself from the CPO case due to the existence of a conflict. However, Brenda's complaint against the judge and sheriff was dismissed shortly thereafter on April 6, 2011.

prejudiced. *Id.*; Section 5(C), Article IV, Ohio Constitution. *Beer v. Griffith*, 54 Ohio St.2d 440, 441 (1978); *Fazio v. Gruttadauria*, 8th Dist. No. 90562, 2008-Ohio-4586, ¶ 25.

{¶40} Brenda has not alleged any reasons why the judge in the trial court should have recused herself, nor has she followed any of the correct procedures to pursue this matter if there was any basis for her claim. Furthermore, this Court is without jurisdiction to rule upon this matter. The fourth assignment of error is overruled.

{¶41} Having found no error prejudicial to the Appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**SHAW, P.J. and ROGERS, J., concur.**

**/jlr**