[Cite as *Saylers v. Salyers*, 2025-Ohio-1605.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
### TRUMBULL COUNTY

REBECCA SALYERS,

      Plaintiff-Appellant/
      Cross-Appellee,

    - vs -

DEREK SALYERS,

      Defendant-Appellee/
      Cross-Appellant.

CASE NO. 2024-T-0093

Civil Appeal from the
Court of Common Pleas,
Domestic Relations Division

Trial Court No. 2023 DR 00075

## OPINION AND JUDGMENT ENTRY

Decided: May 5, 2025
Judgment: Affirmed

*Brendan J. Keating* and *Anthony G. Rossi, III*, Guarnieri & Secrest, PLL, 151 East Market Street, P.O. Box 4270, Warren, OH 44482 (For Plaintiff-Appellant/Cross-Appellee).

*Derek Salyers*, pro se, 3930 Woodside Drive, N.W., Warren, OH 44483 (Defendant-Appellee/Cross-Appellant).

JOHN J. EKLUND, J.

{¶1} Appellant/Cross-Appellee, Rebecca Salyers (Rebecca), appeals the October 9, 2024 Final Decree of Divorce of the Trumbull County Court of Common Pleas, Domestic Relations Division, allocating parental rights for the parties' minor child, T.S., DOB 05-15-2019, and adopting the Modified Shared Parenting Plan submitted by Appellee/Cross-Appellant, Derek Salyers (Derek).

{¶2} Rebecca has raised one assignment of error arguing that the trial court abused its discretion by finding the Modified Shared Parenting Plan Derek submitted was

in the best interest of the child because Derek has exhibited behavior indicating he has an inability to encourage the sharing of love, affection, and contact between the child and the other parent and because Derek has a history of, or potential for, child abuse.

{¶3} Derek has filed a pro se cross-appeal raising eight cross-assignments arguing the trial court: (1) did not give proper weight to T.S.'s desire to live with Derek; (2) erred by designating Rebecca as the residential parent for school purposes despite her lack of stable housing and her testimony indicating an intent to relocate; (3) failed to address Rebecca's pattern of parental alienation; (4) improperly relied on biased and incomplete guardian ad litem (GAL) findings; (5) erred by admitting untimely disclosed evidence; (6) abused its discretion in restricting Derek to supervised visitation; (7) erred by ordering Derek to pay child support despite his role as the primary caregiver with the majority of parenting time; and (8) erred in approving the Modified Shared Parenting Plan.

{¶4} Having reviewed the record and the applicable caselaw, we find Rebecca's assignment of error to be without merit. The trial court considered the best interest of the child and appropriately made findings under R.C. 3109.04(F).

{¶5} We also find that Derek's cross-assignments of error are without merit: (1) the trial court appropriately weighed all factors under R.C. 3109.04(F), including T.S.'s interests as derived from the trial court's in camera interview with the child; (2) Rebecca's contemplated relocation during the hearing and her future plans did not reflect an unstable living condition; (3) the trial court's findings said that both parties had initially struggled to encourage love, affection, and contact between T.S. and the other parent, but noted that both parties had worked to find better patterns of behavior; (4) the GAL did not show bias or partiality to either party and conducted an appropriate investigation; (5) Derek did not

Case No. 2024-T-0093

demonstrate that the admission of evidence he argues was untimely disclosed, was not substantially justified, or that its admission caused harm; (6) the trial court's temporary visitation order merged into the final decree, and this issue is moot; (7) Rebecca was named the residential parent and was appropriately listed as the child support obligee; and (8) the trial court's adoption of the Modified Shared Parenting Plan reflects that the trial court considered that both parties took an active parenting role and did not discount Derek's active role in parenting.

{¶6} Therefore, we affirm the judgment of the Trumbull County Court of Common Pleas, Domestic Relations Division.

## Substantive and Procedural History

{¶7} Rebecca and Derek were married on May 26, 2018. The parties had one child, T.S., DOB 05-15-2019. Derek has one child from a prior relationship, with whom he has no contact. Rebecca has one child from a prior relationship, E.M.

{¶8} On March 24, 2023, Rebecca filed a "Complaint for Divorce (With Children)." Derek filed an Answer and Counterclaim on April 20, 2023.

{¶9} The parties resolved all outstanding issues except for the allocation of parental rights, child support, and medical support. On June 5, 2024, Derek filed a Shared Parenting Plan requesting that he be designated the residential parent and legal custodian, or, in the alternative, that his Shared Parenting Plan be adopted.

{¶10} Derek's proposed Shared Parenting Plan set forth a "7/7" schedule with one consecutive week of parenting time allocated to each party with a right of first refusal to each parent to have the opportunity for additional parenting time over family members or childcare. The proposed Shared Parenting Plan set forth that Derek would be the

Case No. 2024-T-0093

designated residential parent, that Derek would be the child support obligee, and that Rebecca would be the child support obligor.

{¶11} The matter proceeded to hearing on July 8 and 9, 2024, before the trial court.

{¶12} The trial court heard testimony from 13 witnesses, including Derek, Rebecca, the GAL, and Rebecca's minor daughter, E.M.

{¶13} On August 16, 2024, the trial court issued a judgment entry determining that shared parenting was in the best interest of the child.

{¶14} Pursuant to R.C. 3109.04(F)(1), the trial court made the following findings:

{¶15} (a) Both parties wished to be named as residential parent, but, in the alternative, Derek filed a proposed Shared Parenting Plan.

{¶16} (b) The trial court conducted an in camera interview with five-year-old T.S., took his wishes into consideration, and gave them their proper weight.

{¶17} (c) T.S. interacted appropriately with his family. Witnesses for both parties testified that T.S. had great interactions with both parents. The court noted that T.S. returned home from parenting time with Derek angry and that it took T.S. "some time to change."

{¶18} (d) T.S. was well adjusted to home life in both homes and was set to attend Southington Schools, where Rebecca lived.

{¶19} (e) The trial court assessed the mental health of both parents and noted that Derek took prescription anxiety medication and attended counseling. Rebecca also attended counseling for anxiety.

**{¶20}** (f) Rebecca appeared to reluctantly comply with the orders of the court, but she had agreed to expanded modification of parenting time during the summer.

**{¶21}** (g) Child support was current at the time of trial.

**{¶22}** (h) Neither parent had been convicted on a charge of domestic violence. The court observed "that testimony was elicited" from Rebecca and E.M. that Derek "may have been involved with the neglect and sexual abuse of [E.M.] . . . . This has not resulted in any substantial findings and did not involve the minor child in question."

**{¶23}** (i) Neither parent willfully denied the other parenting time, and, during the pendency of the case, Rebecca agreed to an expansion of parenting time for the summer.

**{¶24}** (j) There was no testimony that either parent was attempting to move out of the State of Ohio.

**{¶25}** Next, the trial court made the following findings under R.C. 3109.04(F)(2):

**{¶26}** (a) The parties both had issues with cooperation and joint decision making. Derek had sent disparaging text messages while Rebecca had made school and medical decisions without consulting Derek. The trial court characterized the nature of these issues as "common in divorce cases." The court also said that Derek had called Rebecca when T.S. was taken to the hospital and had made gestures at normalcy while dealing with holidays.

**{¶27}** (b) The parents initially did not have the ability to encourage love, affection, and contact between the child and the other parent. However, the trial court concluded that "[a]s time goes on it is apparent they can."

**{¶28}** (c) Under the history of or potential for abuse, the court noted its previous discussion about allegations against Derek.

{¶29}  (d) The parties resided 10-15 minutes apart.

{¶30}  (e) The GAL recommended mother be designated the residential parent and legal custodian.

{¶31}  In assessing these factors, the trial court said that it "has strained to come to a decision and consider what is in the best interest of the minor child in this matter." The trial court said that both parties loved T.S. unconditionally. The trial court also said that it took the allegations against Derek seriously, but noted they were "unsubstantiated."

{¶32}  Under R.C. 2109.04(A), the trial court observed that it was required to determine whether Derek's filed Shared Parenting Plan was in the best interest of the child and determined that a shared parenting plan was in T.S.'s best interest. However, pursuant to R.C. 3109.04(A)(2) and (D)(1)(a)(iii), the trial court objected to Derek's proposed filed plan and found it was not in the child's best interest.

{¶33}  The trial court determined that both parents should have shared parental rights but that it was in T.S.'s best interest to commence the fall 2024 school year at Southington Schools. The trial court also objected to the child support arraignment set forth in Derek's proposed Shared Parenting Plan and stated that Derek should be the child support obligor. Therefore, the trial court ordered the parties to submit modifications to Derek's proposed Shared Parenting Plan to address those objections.

{¶34}  On September 6, 2024, Derek, through counsel, filed his Modified Shared Parenting Plan, which set forth that Rebecca would be the designated residential parent for school purposes. The Modified Shared Parenting Plan set forth that Derek would pay $378.89 per month in child support.

**{¶35}** On October 9, 2024, the trial court issued its Final Decree of Divorce. The trial court reiterated and adopted the findings of fact and conclusions of law it had set forth in its August 16, 2024 judgment entry and found that Derek's Modified Shared Parenting Plan submitted by order of the court was in T.S.'s best interests. The trial court ordered Derek to be the child support obligor and to pay $378.89 per month.

**{¶36}** Rebecca timely appealed raising one assignment of error. Derek filed a pro se cross-appeal, raising eight assignments of error.

## Assignments of Error and Analysis

**{¶37}** Rebecca's sole assignment of error states: "The Trial Court abused its discretion under O.R.C. 3109.04 when it found the modified shared parenting plan submitted by Defendant-Appellee was in the best interest of the parties' child where the Defendant-Appellee exhibited behavior indicating an inability to encourage the sharing of love, affection, and contact between the child and the other parent, and where the Defendant-Appellee has a history of, or potential for child abuse. (T.d. 66, 58)."

**{¶38}** "[D]ecisions involving the custody of children are accorded great deference on review." *In re K.R.*, 2011-Ohio-1454, ¶ 28 (11th Dist.). "Thus, any judgment of the trial court involving the allocation of parental rights and responsibilities will not be disturbed absent a showing of an abuse of discretion." *Id.* "The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record." *Miller v. Miller*, 37 Ohio St.3d 71, 74 (1988). Thus, "the reviewing court . . . should be guided by the presumption that the trial court's findings were indeed correct." *Id.*

**{¶39}** "The highly deferential abuse-of-discretion standard is particularly appropriate in child custody cases since the trial judge is in the best position to determine the credibility of the witnesses and there 'may be much that is evident in the parties' demeanor and attitude that does not translate well to the record.'" *In re K.R.* at ¶ 30, quoting *Wyatt v. Wyatt*, 2005-Ohio-2365, ¶ 13 (11th Dist.). "In so doing, a reviewing court is not to weigh the evidence, 'but must ascertain from the record whether there is some competent evidence to sustain the findings of the trial court.'" *Id.*, quoting *Clyborn v. Clyborn*, 93 Ohio App.3d 192, 196 (3d Dist. 1994).

**{¶40}** "The term 'abuse of discretion' . . . is one of art, connoting judgment exercised by a court which neither comports with reason, nor the record." *State v. Underwood*, 2009-Ohio-2089, ¶ 30 (11th Dist.). An abuse of discretion is "the trial court's 'failure to exercise sound, reasonable, and legal decision-making.'" *State v. Beechler*, 2010-Ohio-1900, ¶ 62 (2d Dist.), quoting *Black's Law Dictionary* (8th Ed. 2004); *State v. Raia*, 2014-Ohio-2707, ¶ 9 (11th Dist.). "When an appellate court is reviewing a pure issue of law, 'the mere fact that the reviewing court would decide the issue differently is enough to find error[.] . . . By contrast, where the issue on review has been confined to the discretion of the trial court, the mere fact that the reviewing court would have reached a different result is not enough, without more, to find error.'" *Raia* at ¶ 9, quoting *Beechler* at ¶ 67.

**{¶41}** "In determining whether shared parenting is in the best interest of the children, the court shall consider all relevant factors, including, but not limited to, the factors enumerated in" R.C. 3109.04(F)(1) and (F)(2). R.C. 3109.04(F)(2).

**{¶42}** The factors in R.C. 3109.04(F)(1) are:

(a) The wishes of the child's parents regarding the child's care;

(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d) The child's adjustment to the child's home, school, and community;

(e) The mental and physical health of all persons involved in the situation;

(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

(h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to [certain criminal offenses] . . . ;

(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.

{¶43} The factors in R.C. 3109.04(F)(2) are:

(a) The ability of the parents to cooperate and make decisions jointly, with respect to the children;

(b) The ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent;

(c) Any history of, or potential for, child abuse, spouse abuse, other domestic violence, or parental kidnapping by either parent;

(d) The geographic proximity of the parents to each other, as the proximity relates to the practical considerations of shared parenting;

(e) The recommendation of the guardian ad litem of the child, if the child has a guardian ad litem.

{¶44} Specifically, Rebecca argues that the trial court abused its discretion in ordering a shared parenting plan because the conflict between the parties was high, Derek had sent repeated disparaging text messages to Rebecca, had posted a meme video of a man with Derek's face superimposed on it slapping people, and had posted a video for his weekly blog series on his YouTube channel making light of T.S. getting a plastic dinosaur lodged in his rectum.

{¶45} Rebecca also argues that the GAL recommended that Rebecca be named the residential parent and that Derek be granted standard visitation rights. Further, a Children Services (CSB) investigation into claims that Derek had sexually abused Rebecca's daughter E.M. were "indicated," meaning that a caseworker had made a determination the neglect or abuse has occurred.

{¶46} Given these factors, Rebecca argues that the trial court failed to appropriately weigh the best interest factors set forth in R.C. 3109.04(F)(2). In particular, she states that the trial court failed to consider Derek's history of, or potential for, abuse under R.C. 3109.04(F)(2)(c) because the trial court discounted the indicated abuse for the stated reason that E.M.'s accusation "have not been substantiated." She argues that R.C. 3109.04(F)(2)(c) applies to *any* history of, or potential for, child abuse and that the trial court improperly discounted Derek's history for abuse merely because it was not directed toward T.S.

{¶47} While Rebecca's arguments are well crafted, they are unpersuasive given our standard of review and the trial court's clear findings under R.C. 3109.04(F).

Case No. 2024-T-0093

{¶48} First, the trial court noted that it "has strained to come to a decision and consider what is in the best interest of the minor child in this matter" and that both parties loved T.S. Such considerations make clear that the trial court took its role seriously and thoughtfully.

{¶49} Some portions of the record paint Derek in a negative light, such as those highlighted in Rebecca's brief. However, the trial court's findings were not one-sided. The trial court also made findings that Rebecca had initially been reluctant to comply with court orders and stated that both parents had initially struggled to encourage love, affection, and contact between the child and the other parent and that both parties had initially struggled to cooperate and make decisions jointly. However, the trial court found that these issues had improved with time and characterized these issues as "common in divorce cases."

{¶50} It does bear noting that the trial court found that the allegations of sexual abuse against Derek were not "substantiated." No criminal charges were filed as a result of the investigation, but CSB did find that E.M.'s claim was "indicated." The GAL testified that, relevant to the investigation here, there were three possible outcomes: "indicated," "un[substantiated]," and "substantiated."

{¶51} She said that "indicated" means that a caseworker "has made a determination that neglect or abuse has occurred based on their assessment and investigation. *See* Adm.Code 5101:2-1-01(B)(161) ("'Indicated' means the report disposition in which there is circumstantial or other isolated indicators of child abuse or neglect lacking confirmation; or a determination by the caseworker that the child may have been abused or neglected based upon completion of an assessment/investigation.")

The GAL testified that "substantiated" means that the alleged perpetrator admitted to the claim or that there has been an adjudication confirming the claim. *See* Adm.Code 5101:2-1-01(B)(316). "Unsubstantiated" means the "assessment/investigation determined no occurrence of child abuse or neglect." *See* Adm.Code 5101:2-1-01(B)(344).

{¶52} Because no formal charge was ever filed in reference to the claim, the claim was not substantiated. However, that does not mean that the claim was "unsubstantiated." The trial court's broad finding – that CSB did not have a concern that T.S. was in an abusive situation – comports with the record. That appears to be what animated the trial court's decision in its finding under R.C. 3109.04(F)(2)(c).

{¶53} There is competent evidence in the record to sustain the trial court's findings and the adoption of the Modified Shared Parenting Plan. *See In re K.R.*, 2011-Ohio-1454, at ¶ 30 (11th Dist.).

{¶54} Accordingly, Rebecca's sole assignment of error is without merit.

{¶55} Turning to Derek's cross-appeal, Derek's first assignment of error states: "1. The trial court failed to give adequate weight to [T.S.'s] consistent expression of his desire to live with Derek."

{¶56} R.C. 3109.04(F) requires the trial court to consider "all relevant factors" in making its determination whether shared parenting is in the best interest of the child. "Under the best-interest test, no single factor is controlling, and the weight to be given to any factor lies within the trial court's discretion." *In re L.L.*, 2020-Ohio-5609, ¶ 8 (1st Dist.). The wishes of the child "'are but a single factor' for the court to consider in allocating parental rights and responsibilities." *Harmon v. Radcliff*, 2017-Ohio-8682, ¶ 50 (12th Dist.) (quoting the trial court). In this case, the trial court's findings of fact and conclusions of

law stated that it conducted an in camera interview with T.S., took T.S.'s interests into account, and gave those interests their appropriate weight. During the hearing, the GAL testified that she did not try to ascertain T.S.'s wishes because he had just turned five years old. It is within the trial court's discretion to weigh all factors and allocate parental rights on that basis.

{¶57} Accordingly, Derek's first cross-assignment of error is without merit.

{¶58} Derek's second cross-assignment of error states: "2. The trial court erred in designating Rebecca as the residential parent for school purposes, despite her lack of a stable living arrangement and testimony confirming her intent to relocate."

{¶59} During the hearing, Rebecca testified that after the parties separated, she was living with her mother and father in the Southington, Ohio school district. She said that she was looking to move out and buy a house in either the Southington or LaBrae school districts. Rebecca testified that Derek lived in LaBrae city schools and so if T.S. went to LaBrae city schools, Derek would be able to get T.S. on and off the bus. She said that both Southington and LaBrae schools were about 15 minutes away from Derek. She also said that E.M. already attended LaBrae and that T.S. would know people in the school if she were to move to LaBrae.

{¶60} The GAL testified that T.S. was five years old and that he would quickly make friends in either the LaBrae or Southington schools. She said that Rebecca being designated the residential parent was more important than the particular school system he attended.

{¶61} Derek's characterization that Rebecca did not have a stable home environment and that a possible relocation would create instability for T.S. is not

Case No. 2024-T-0093

supported by the record. More importantly, Rebecca's relocation is not in the record before us, and we cannot opine on the ultimate relocation.

{¶62} Accordingly, Derek's second assignment of error is without merit.

{¶63} Derek's third cross-assignment of error states: "3. The trial court failed to recognize and address the pattern of parental alienation by Rebecca."

{¶64} Testimony at the hearing indicated that Rebecca had excluded Derek from some parenting time and from making certain decisions, including about school attendance, and that she did not agree with granting Derek additional parenting time above the mandated order. However, Derek's argument that the trial court "failed to recognize" these actions is incorrect. The trial court's findings of fact specifically found that Rebecca had made school and medical decisions without Derek and noted Rebecca's reluctance to comply with court orders. But the trial court also found that Rebecca had later agreed to expanded parenting time during the summer. Similarly, the trial court found that Derek had sent disparaging text messages to Rebecca. However, the trial court also found that as time went by, the parties were better able to encourage love, affection, and contact between T.S. and the other parent.

{¶65} The record demonstrates that the trial court considered parental alienation and found that the parties struggled at first in a way that is common in divorce cases but had worked to find a better pattern of behavior.

{¶66} Accordingly, Derek's third cross-assignment of error is without merit.

{¶67} Derek's fourth cross-assignment of error states: "4. The trial court improperly relied on biased and incomplete findings from the GAL."

Case No. 2024-T-0093

**{¶68}** Appellant argues that the GAL admitted that she did not inspect either party's home, only had one meeting with Derek, and did not try to ascertain T.S.'s wishes. He claims that the GAL's recommendation relied on Rebecca's "unverified statements" and omitted evidence of his active parenting role.

**{¶69}** Sup.R. 48.03(D) of the Ohio Rules of Superintendence sets forth general responsibilities and practices for a GAL through the course of an investigation to make a determination as to the best interests of the child. The rule provides:

(D) Duties of the Guardian Ad Litem. Unless specifically relieved by the court, the duties of a guardian ad litem shall include, but are not limited to, the following:

(1) Become informed about the facts of the case and contact all relevant persons;

(2) Observe the child with each parent, foster parent, guardian or physical custodian;

(3) Interview the child, if age and developmentally appropriate, where no parent, foster parent, guardian, or physical custodian is present;

(4) Visit the child at the residence or proposed residence of the child in accordance with any standards established by the court;

(5) Ascertain the wishes and concerns of the child;

(6) Interview the parties, foster parents, guardians, physical custodian, and other significant individuals who may have relevant knowledge regarding the issues of the case. The guardian ad litem may require each individual to be interviewed without the presence of others. Upon request of the individual, the attorney for the individual may be present.

(7) Interview relevant school personnel, medical and mental health providers, child protective services workers, and court personnel and obtain copies of relevant records;

(8) Review pleadings and other relevant court documents in the case;

(9) Obtain and review relevant criminal, civil, educational, mental health, medical, and administrative records pertaining to the child and, if appropriate, the family of the child or other parties in the case;

(10) Request that the court order psychological evaluations, mental health substance abuse assessments, or other evaluations or tests of the parties as the guardian ad litem deems necessary or helpful to the court;

(11) Review any necessary information and interview other persons as necessary to make an informed recommendation regarding the best interest of the child.

{¶70} "[V]iolations of the Rules of Superintendence, however, are not grounds for reversal." *Allen v. Allen*, 2010-Ohio-475, ¶ 31 (11th Dist.). "The 'Rules of Superintendence are designed (1) to expedite the disposition of both criminal and civil cases in the trial courts of this state, while at the same time safeguarding the inalienable rights of litigants to the just processing of their causes; and (2) to serve that public interest which mandates the prompt disposition of all cases before the courts.'" *Id.*, quoting *State v. Singer*, 50 Ohio St.2d 103, 109-110 (1977). The Rules of Superintendence are not equivalent to rules of procedure and do not have the same force as a statute. *Id.* If certain items in Sup.R. 48.03(D) are not addressed, the trial court can "'determine the weight to be given to the guardian ad litem's recommendation.'" *In re A.R.*, 2019-Ohio-2166, ¶ 29 (11th Dist.), quoting *In re A.M.*, 2016-Ohio-8433, ¶ 26 (11th Dist.).

{¶71} Here, the GAL specifically stated that she did not ask T.S. about his wishes because he had just turned five when she met him. The GAL went to Derek's home but did not go inside. She said that she did not go to Rebecca's house but observed Rebecca and T.S. at the GAL's office. She said that she did not conduct home inspections because the issues in the case "revolved around the behavior between the parties, the allegations that were made in the presence of [T.S.] and the remarks made in the presence of [T.S.]. So, I focused on what were the issues in this case." She said her primary concern was

Case No. 2024-T-0093

for the parenting style of each parent, particularly Derek making profane or inflammatory remarks to or about Rebecca.

{¶72} The GAL's involvement in the case demonstrates that she took the necessary steps to complete her investigation and report. There is nothing to suggest that she omitted any evidence or showed partiality to either party. Her decision not to inspect either home was reasonable, and she comported with Sup.R. 48.03(D) by observing T.S. with each parent. Similarly, due to T.S.'s young age, her decision not to ask T.S. about his wishes was reasonable.

{¶73} Accordingly, Derek's fourth cross-assignment of error is without merit.

{¶74} Derek's fifth cross-assignment of error states: "5. The trial court erred in admitting late-disclosed evidence and witness testimony."

{¶75} Derek argues that it was error for the court to admit late disclosed evidence. Rebecca provided Derek with a witness list on June 26, 2024, which did not include contact information for the witnesses. On the day of the hearing, Derek's trial counsel filed a motion in limine seeking to exclude the testimony of Kathy Milliron, E.M., any other witnesses not named in the witness list, a Facebook post provided by Rebecca on July 5, 2024, and a YouTube video provided on July 5, 2024.

{¶76} The trial court overruled the motion in limine because Derek's attorney had not filed a motion to compel discovery. During the hearing, Derek's trial attorney objected to these witnesses and exhibits on the basis that they were not timely disclosed. The trial court overruled the objections.

{¶77} Civ.R. 37(C)(1) provides:

> If a party fails to provide information or identify a witness in a timely manner as required by Civ.R. 26(A) or (E), the party is not allowed to use that

Case No. 2024-T-0093

information or witness to supply evidence on a motion, at a hearing, or at a trial, **unless the failure was substantially justified or is harmless.** In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard, may do any of the following:

> (a) Order payment of the reasonable expenses, including attorney's fees, caused by the failure;
>
> (b) Inform the jury of the party's failure;
>
> (c) Impose other appropriate sanctions, including any of the orders listed in Civ.R. 37(B)(1)(a) through (g).

(Bold added.)

**{¶78}** Derek filed his witness list on June 25, 2024. His motion in limine indicated that he received a copy of Rebecca's witness list, albeit without contact information for each witness, on June 26, 2024, 13 days before trial.[1] He did not file a Civ.R. 37(A) motion to compel the contact information for the listed witnesses. However, it is not necessary that he do so in order to raise a Civ.R. 37(C) motion. *See Salem Med. Arts & Dev. Corp. v. Columbiana Cty. Bd. of Revision*, 1998-Ohio-248, ¶ 19.

**{¶79}** One of the witnesses Derek objected to was E.M., Rebecca's minor daughter who lived with Rebecca. The other witness Derek objected to was Kathy Milliron, Rebecca's mother, whom Rebecca was living with. These witnesses were not unknown to Derek. Given the above circumstances, we conclude any failure to identify a witness in a timely manner as required by Civ.R. 26(A) or (E) was harmless.

**{¶80}** Similarly, the two videos that Rebecca played during trial were videos that Derek had made and uploaded to the internet. In the case of at least one of the videos, it appears that it had only been uploaded in the month before the hearing. Rebecca provided these videos to Derek as potential exhibits on July 5, 2024. However, we again find their admission during the trial to be harmless. Derek created the videos, and their

---

1. However, the filing date reflects July 2, 2024, one week before trial.

Case No. 2024-T-0093

content was not a surprise to him. Further, the trial court did not reference them as a basis for its decision.

**{¶81}** Accordingly, Derek's fifth cross-assignment of error is without merit.

**{¶82}** Derek's sixth cross-assignment of error states: "6. The trial court abused its discretion in restricting Derek to supervised visitation without evidentiary support."

**{¶83}** Under this assignment of error, Derek argues that the trial court's temporary order regarding visitation was an unnecessary restriction and was an abuse of discretion. However, this issue is now moot.

**{¶84}** The trial court's visitation restriction was a temporary order. "[U]nless a temporary order is reduced to a separate judgment or specifically referred to in the final decree, all temporary orders merge into the final decree of divorce and become moot." *Salpietro v. Salpietro*, 2023-Ohio-169, ¶ 23 (6th Dist.). The trial court's issuance of the final decree has "rendered moot all that transpired before it." *Barna v. Barna*, 1987 WL 19265, *3 (8th Dist. Oct. 29, 1987).

**{¶85}** While Derek may argue that the trial court's temporary restrictions disrupted T.S.'s routine and emotional bond, it is impossible for this Court to grant any substantive relief because a court cannot "give . . . the time back." *In re Bailey*, 2005-Ohio-3039, ¶ 10 (1st Dist.).

**{¶86}** Accordingly, Derek's sixth assignment of error is without merit.

**{¶87}** Derek's seventh assignment of error states: "7. The trial court erred in ordering Derek to pay child support despite his role as the primary caregiver with the majority of parenting time."

Case No. 2024-T-0093

{¶88} "Absent an abuse of discretion, a trial court's determination regarding child support obligations will not be disturbed on appeal." *Haun v. Haun*, 2019-Ohio-5408, ¶ 7 (11th Dist.).

{¶89} Derek argues that the Modified Shared Parenting Plan gives him the right of first refusal to allow him additional parenting time. He states that this has resulted in him having T.S. "55-60% of the time." He argues that this has created an "undue financial burden" on him, which violates the principles of shared parenting and equitable financial responsibility.

{¶90} However, Derek has not offered any evidence from the hearing that supports his contention that he is in fact parenting T.S. 55-60% of the time. More importantly, pursuant to R.C. 3119.07, "the parent who has been designated the residential parent shall not be ordered to pay the child support figure that appears in his or her column on line 24 of the worksheet provided in the Revised Code." *Shaffer v. Shaffer*, 2003-Ohio-5223, ¶ 12 (11th Dist.).

{¶91} Line 24 of the child support worksheet calculation in this case recommended a monthly child support obligation of $695.04 for Derek and $539.49 for Rebecca. However, the trial court applied a downward deviation of $347.52 for Derek based on his extended parenting time, bringing his total obligation, including all fees and cash medical support, to $378.89.

{¶92} The trial court took Derek's extended parenting time into account and applied a downward deviation to his child support obligation. However, Rebecca was named as the residential parent. Thus, Rebecca "should have been designated the obligee and [Derek] the obligor on the child support worksheet." *See Lindman v. Lindman*,

Case No. 2024-T-0093

2005-Ohio-4708, ¶ 32 (5th Dist.). The trial court did not abuse its discretion in ordering Derek to pay child support.

{¶93} Accordingly, Derek's seventh cross-assignment of error is without merit.

{¶94} Derek's eighth cross-assignment of error states: "8. The trial court erred in approving the shared parenting plan without sufficiently considering Derek's active parenting role before the divorce."

{¶95} At the hearing, evidence suggested that Derek maintained consistent involvement in T.S.'s life, including taking him to doctor appointments and engaging in daily activities. However, Rebecca also testified that during the marriage, she was T.S.'s primary caregiver. She took T.S. to and from daycare, got him ready for bed, prepared meals, took off work when T.S. was sick, and got him ready in the morning. In fact, Rebecca testified that Derek did not typically help with these tasks and instead would engage in hobbies or sleep.

{¶96} Applying the highly deferential standard of review discussed above, we cannot conclude that the trial court erred in adopting the Modified Shared Parenting Plan because Derek had an active role in parenting. Derek's involvement in T.S.'s parenting is what is required of any decent parent. Derek has not suggested that Rebecca was not an involved, loving, and active parent. There is nothing to suggest otherwise. The trial court's adoption of the Modified Shared Parenting Plan reflects that the trial court did consider that both parties took an active parenting role.

{¶97} Accordingly, Derek's eighth cross-assignment of error is without merit.

Case No. 2024-T-0093

{¶98} For the foregoing reasons, the judgment of the Trumbull County Court of Common Pleas, Domestic Relations Division, is affirmed.

MATT LYNCH, J.,

SCOTT LYNCH, J.,

concur.

# JUDGMENT ENTRY

For the reasons stated in the opinion of this court, Appellant's assignment of error and Cross-Appellant's assignments of error are without merit. It is the judgment and order of this court that the judgment of the Trumbull County Court of Common Pleas, Domestic Relations Division, is affirmed.

Costs to be taxed against the parties equally.

JUDGE JOHN J. EKLUND

JUDGE MATT LYNCH,
concurs

JUDGE SCOTT LYNCH,
concurs

**THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY**

A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure.

Case No. 2024-T-0093