[Cite as *Ferrell v. Ferrell*, 2025-Ohio-5476.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## TRUMBULL COUNTY

| | |
|---|---|
| JULIUS ANTHONY FERRELL, | **CASE NO. 2025-T-0040** |
| Plaintiff-Appellee, | |
| - vs - | Civil Appeal from the Court of Common Pleas, Domestic Relations Division |
| JAMIE LYN FERRELL a.k.a. JAMIE LYN CARNAHAN, | |
| Defendant-Appellee, | Trial Court No. 2017 DR 00428 |
| GRANT T. WILCOX, | |
| Third Party Defendant-Appellant. | |

## OPINION AND JUDGMENT ENTRY

Decided: December 8, 2025
Judgment: Affirmed

*Julius Anthony Ferrell*, pro se, 1300 Virginia Avenue, Apt. 303, Pittsburgh, PA 15135 (Plaintiff-Appellee).

*Jamie Lyn Ferrell*, pro se, 1407 Drexel Avenue, Warren, OH 44485 (Defendant-Appellee).

*Grant T. Wilcox*, pro se, 9858 Green Drive, Windham, OH 44288 (Appellant).

*Joseph M. Messuri*, 755 Boardman-Canfield Road, Suite M1, Youngstown, OH 44512 (Guardian Ad Litem).

SCOTT LYNCH, J.

{¶1} Appellant, Grant T. Wilcox, appeals the denial of his Motion for Visitation Rights by the Trumbull County Court of Common Pleas, Domestic Relations Division.

Wilcox sought visitation with the minor children of defendant-appellee, Jamie L. Ferrell. For the following reasons, we affirm the decision of the court below.

### Procedural and Substantive History

{¶2}    The underlying proceedings began as a divorce action between the parents of the minor children.  The parents were granted a divorce in October 2018, and Ferrell was designated custodial parent of the minor children.

{¶3}    On August 6, 2024, Wilcox filed a Motion to Intervene as a Third-Party Defendant and Motion for Visitation Rights.  The Motion to Intervene was granted on September 18, 2024.

{¶4}    On March 12, 2025, Wilcox' Motion for Visitation Rights was tried before a magistrate.  The children's father (plaintiff in the divorce action) did not participate.

{¶5}    On April 4, 2025, a Magistrate's Decision was issued.  The magistrate found as follows:

> The parties did not call any witnesses.  Rather, each party presented a narrative to the court of their respective positions and were allowed to question each other.  The Guardian Ad Litem was appointed on 9/18/2024 and filed his Report and Recommendation with the court on 01/23/202[5] and was available for questioning by the respective parties.
>
> …
>
> Based upon the evidence presented and testimony of the parties, and taking into account that both parties were self-represented, the Third-Party Defendant wishes to have a set visitation schedule with the three (3) minor children [ages 17, 14, and 10 at the time of trial] who are not related to him.  He has known the children since 2017 and has helped the children over the years as evidenced by the exhibits he submitted.  Although ORC §3109.051(D) provides an avenue for the Third-Party Defendant to request visitation with non-related children, the determining factor is whether or not it's in their best interest.

The court has reviewed all 16 factors under ORC §3109.051(D) and has reviewed *Harrold v. Collier, 107 Ohio St.3d 44, 2005-Ohio-5334* and has given special weight to the mother's wishes. Although the Third-Party Defendant has been involved with the children for a period of time, that does not demand a set visitation schedule.

It is found to be in the best interest of the children that stability is maintained within the family and a set visitation schedule would upset that stability. Therefore, the Third-Party Defendant's Motion for Visitation Rights filed on August 6, 2024, is found not to be in the best interest of the minor children and his motion for visitation is **denied.**

{¶6} Wilcox filed objections to the Magistrate's Decision which were denied by the domestic relations court on May 21, 2025. The court made the following relevant findings:

There was no transcript available and no affidavit of statement of evidence was provided. However, this Court finds that the Magistrate's Decision was a thorough review of the evidence provided by way of each party's narrative. The Guardian ad Litem, Attorney Joseph Messuri, was also present.

The Objection argues that O.R.C.§ 3109.051(B)(1)(b) requires a formal finding that the party non-parent has an interest in the welfare of the child. The Court does not find that the statute requires such a finding. However, the Magistrate did conduct a best interest test and gives weight to the objector's relationship to the children and in no way dismissed his role. Along with the best interest analysis, the Magistrate took into consideration a thorough review of all the factors under O.R.C.§ 3109.051(D) and gave special weight to the Defendant-Mother's wishes and she made it clear she did not want this non-parent around the children.

{¶7} On June 13, 2025, Wilcox filed a Notice of Appeal.

### *The standard of review in custody matters*

{¶8} "A trial court has broad discretion in proceedings involving the care and custody of children." *In re Mullen*, 2011-Ohio-3361, ¶ 14.

"The discretion which a trial court enjoys in custody matters should be accorded the utmost respect, given the nature of the proceeding

Case No. 2025-T-0040

and the impact the court's determination will have on the lives of the parties concerned. The knowledge a trial court gains through observing the witnesses and the parties in a custody proceeding cannot be conveyed to a reviewing court by a printed record. *Trickey v. Trickey* (1952), 158 Ohio St. 9, 13, 47 O.O. 481, 483, 106 N.E.2d 772, 774. In this regard, the reviewing court in such proceedings should be guided by the presumption that the trial court's findings were indeed correct. See *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 410, 461 N.E.2d 1273, 1276."

(Citation omitted.) *Reynolds v. Goll*, 1996-Ohio-153, ¶ 10.

{¶9} "This term [abuse of discretion], commonly employed to justify an interference by a higher court with *the exercise of discretionary power* by a lower court, implies *not merely error of judgment*, but perversity of will, passion, prejudice, partiality, or moral delinquency. *The exercise of an honest judgment*, however erroneous it may appear to be, *is not an abuse of discretion.*" (Citation omitted.) *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35. "[T]his definition squares with the common understanding of what constitutes an abuse of discretion: a court exercising its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority." *Id.*

### Wilcox' failure to submit a transcript or affidavit of evidence in support of his objections to the Magistrate's Decision

{¶10} "An objection to a [magistrate's] factual finding … shall be supported by a transcript of all the evidence submitted to the magistrate relevant to that finding or an affidavit of that evidence if a transcript is not available." Civ.R. 53(D)(3)(b)(iii).

{¶11} In the present case, no transcript of the hearing before the magistrate on Wilcox' Motion for Visitation Rights was available. In support of his objections, Wilcox filed a document captioned Affidavit of Evidence pursuant to Civ.R. 53(D)(3)(b)(iii). The document, however, is not notarized and, therefore, not a valid affidavit. "To constitute a valid affidavit, the declaration must be signed by the affiant and notarized." *Absolute*

Case No. 2025-T-0040

*Resolutions Invests, LLC v. Moran*, 2025-Ohio-2999, ¶ 43 (2d Dist.); *Toledo Bar Assn. v. Neller*, 2004-Ohio-2895, ¶ 24 ("only a written declaration made under oath before a proper officer qualifies as an 'affidavit'"); *Benedict v. Peters*, 58 Ohio St. 527, 536-537 (1898) ("[a] paper purporting to be an affidavit, but not to have been sworn to before an officer, is not an affidavit").[1]

{¶12} "[I]f a party fails to properly support his objections to the magistrate's decision with a transcript of the hearing before the magistrate, the trial court must accept all of the magistrate's findings of fact as true and review only the magistrate's legal conclusions in light of the facts found by the magistrate." (Citation omitted.) *Leiby v. Am. Title Solutions, LLC*, 2024-Ohio-6093, ¶ 9 (9th Dist.). "In other words, an appeal under these circumstances can be reviewed by the appellate court to determine whether the trial court's application of the law to its factual findings constituted an abuse of discretion." *State ex rel. Duncan v. Chippewa Twp. Trustees*, 1995-Ohio-272, ¶ 10.

### First Assignment of Error: The trial court erred by failing to make a required predicate finding under R.C. 3109.051(B)(1)(b) that Appellant had an interest in the children's welfare, a mandatory prerequisite to considering visitation.

{¶13} "In a divorce … proceeding that involves a child, the court may grant reasonable companionship or visitation rights to … any other person other than a parent, if … [t]he court determines that the … other person has an interest in the welfare of the child." R.C. 3109.051(B)(1)(b). Wilcox argues that the magistrate failed to make this threshold finding.

---

1. We further note that the purported affidavit submitted by Wilcox only accounts for his testimony rather than "all the evidence" as required by the rule. "An affidavit under [Civ.R. 53(D)(3)(b)(iii)] must contain a description of all the relevant evidence, not just the evidence deemed relevant by the party objecting to the magistrate's findings." *Gumins v. Ohio Dept. of Rehab. & Corr.*, 2011-Ohio-3314, ¶ 13 (10th Dist.).

Case No. 2025-T-0040

{¶14}  The domestic relations court ruled that the statute does not require that a "formal finding" on the other person's interest in the welfare of a child.  We agree.  By considering whether visitation with Wilcox was in the best interest of the children, the magistrate necessarily determined that he had an interest in their welfare.  Unless this determination had been made, consideration of the best interests would have been improper.  *Brammer v. Brammer*, 2006-Ohio-3318, ¶ 26 (5th Dist.) ("the trial court implicitly determined appellees had an interest in the welfare of the children and that visitation was in the children's best interest when it granted visitation to appellees").

{¶15}  The first assignment of error is without merit.

### Second Assignment of Error: The trial court abused its discretion by excluding material evidence related to the best-interest analysis.

{¶16}  Wilcox argues that the magistrate erred by excluding evidence of the mother's conviction for theft and filing of frivolous protection orders against him inasmuch as such evidence "was highly relevant to her credibility and potential animus towards Appellant."  Brief of Appellant at 3.

{¶17}  In the absence of a transcript or proper affidavit of evidence, this court is unable to review the propriety of the magistrate's evidentiary rulings (as was the domestic relations court).  "Without a transcript to provide us context, we cannot review either the proffered evidence or the magistrate's rulings on the admissibility of that evidence." *Cargile v. Ohio Dept. of Adm. Servs.*, 2012-Ohio-2470, ¶ 15 (10th Dist.); *K.K.S. v. M.M.J.*, 2024-Ohio-70, ¶ 25 (8th Dist.) ("the lack of a properly submitted transcript means we cannot review the evidence itself or the nature and context of the magistrate's rulings on the admissibility of the evidence because the trial court did not consider the transcripts"); *State v. Kempton*, 2016-Ohio-1183, ¶ 8 (4th Dist.) ("[t]he failure to file a trial transcript or

Case No. 2025-T-0040

its equivalent is generally fatal to an appeal based on the admission or exclusion of evidence").

{¶18} The second assignment of error is without merit.

***Third Assignment of Error: The trial court violated Appellant's due process rights by failing to formally admit the Guardian ad Litem (GAL) report and by denying Appellant the opportunity to cross-examine the GAL, contrary to Sup.R. 48.06(C) and established precedent.***

{¶19} In support of this assignment of error, Wilcox relies on the Ohio Rules of Superintendence which provide that "[t]he court shall consider the recommendation of the guardian ad litem in determining the best interest of the child only when the report or a portion of the report has been admitted as an exhibit." Sup.R. 48.06(C)(2).

{¶20} We find no error. The guardian's report in the present case was filed in January 2025 (about two months prior to the hearing before the magistrate) and was available to all parties. The magistrate acknowledged that the report was filed but did not reference the report in his recommendation. Certainly, the magistrate did not adopt the guardian's recommendation regarding visitation. Neither did the domestic relations court indicate that it considered or gave any weight to the guardian's report. Accordingly, we find no violation of the rule.

{¶21} Moreover, it has been the consistent position of this court that the Rules of Superintendence do not have the force of law and their violation does not ordinarily provide grounds for reversal of a decision. *Salyers v. Salyers*, 2025-Ohio-1605, ¶ 70 (11th Dist.) ("[t]he Rules of Superintendence are not equivalent to rules of procedure and do not have the same force as a statute"); *Allen v. Allen*, 2010-Ohio-475, ¶ 31 (11th Dist.) ("[s]uch violations of the Rules of Superintendence … are not grounds for reversal"); *also*

Case No. 2025-T-0040

*In re R.J.E.*, 2017-Ohio-886, ¶ 43 (11th Dist.) ("ordinarily, a GAL's report is not considered evidence, but is merely submitted as additional information for the court's consideration, similar to a pre-sentence investigation report in a criminal proceeding").  Inasmuch as Wilcox has access to the guardian's report and the magistrate neither relied on the report nor adopted his recommendation, we find no prejudice to Wilcox in the failure to formally admit it into evidence.

{¶22}  Wilcox also relies on the Ohio Supreme Court decision in *In re Hoffman*, 2002-Ohio-5368, for the proposition that, "[i]n a permanent custody proceeding in which the guardian ad litem's report will be a factor in the trial court's decision, parties to the proceeding have the right to cross-examine the guardian ad litem concerning the contents of the report and the basis for a custody recommendation."  *Id.* at syllabus.  Although *Hoffman* was decided in the context of a permanent custody proceeding, this court has applied its holding on other custodial proceedings.  *Allen* at ¶ 35.

{¶23}  The Magistrate's Decision in the present case expressly states that the guardian ad litem "was available for questioning by the respective parties" at the hearing on the Motion for Visitation Rights.  Wilcox claims to the contrary that he was denied the opportunity to cross-examine the guardian.  The issue of whether or not Wilcox was provided an opportunity to question the guardian is a factual one, then, which this court is unable to resolve in the absence of a transcript or affidavit of evidence as explained above.

{¶24}  The third assignment of error is without merit.

Case No. 2025-T-0040

***Fourth Assignment of Error: The trial court's best-interest analysis under R.C. 3109.051(D) was legally and factually inadequate, demonstrating an unbalanced and erroneous weighing of the statutory factors.***

{¶25} Wilcox argues that "[t]he magistrate gave virtually dispositive weight to the custodial mother's objection while minimizing or entirely disregarding other critical factors, including the GAL's clear recommendation for visitation and Appellant's undisputed seven-year, continuous, and significant relationship with the children." Brief of Appellant at 5. To the extent that Wilcox is arguing that the lower court's judgment is factually in error, we must reject the argument for the reasons stated above. Rather, we will duly consider "whether the trial court's application of the law to its factual findings constituted an abuse of discretion." *Duncan*, 1995-Ohio-272, at ¶ 10.

{¶26} The Ohio Supreme Court has held that "Ohio courts are obligated to afford some special weight to the wishes of parents of minor children when considering petitions for nonparental visitation." *Harrold v. Collier*, 2005-Ohio-5334, paragraph one of the syllabus. "In fact, special weight is required by R.C. 3109.051(D)(15), since the statute explicitly identifies the parents' wishes regarding the requested visitation or companionship as a factor that must be considered when making its 'best interest of the child' evaluation." *Id.* at ¶ 43.

{¶27} We similarly emphasize the appropriateness of affording a parent's wishes special weight, particularly in the extraordinary situation where a non-parent is claiming rights of visitation, years after the final decree of divorce against the natural parents neither of whom has been deemed unfit in any respect. This issue is not without constitutional implications. The "right of parents to make decisions regarding the care, custody, and control of their children" is "fundamental." *Troxel v. Granville*, 530 U.S. 57,

Case No. 2025-T-0040

66 (2000). "[T]here is a presumption that fit parents act in the best interests of their children," and, as along as this so, there should "normally be no reason for the State to inject itself into the private realm of the family to further question the ability of [a] parent to make the best decisions concerning the rearing of that parent's children." *Id.* at 68. Be that as it may, Ohio's non-parent visitation allows for the possibility of such interference "at any time after a decree or final order is issued" under certain conditions. R.C. 3109.051(B)(2); *In re N.C.W.*, 2014-Ohio-3381, ¶ 24-25 (12th Dist.).

{¶28} Contrary to Wilcox' argument, we do not find any legal error in the magistrate's decision to give "dispositive" weight to the mother's wishes regarding visitation. The Magistrate's Decision demonstrates that he considered all required statutory and relevant factors regarding the best interests of the children. He was obligated to give "special weight" to the mother's wishes in particular and it was within his discretion to afford the other factors whatever weight he deemed proper and balance them accordingly. *Salyers*, 2025-Ohio-1605, at ¶ 56 (11th Dist.) ("[u]nder the best-interest test, no single factor is controlling, and the weight to be given to any factor lies within the trial court's discretion") (citation omitted).

{¶29} The fourth assignment of error is without merit.

***Fifth Assignment of Error: The trial court failed to properly address the loss of the hearing transcript, including the in-camera interviews, and neglected to acknowledge or incorporate Appellant's timely filed App.R. 9(C) statement of the evidence, thereby frustrating meaningful appellate review.***

{¶30} Wilcox' first argument under this assignment of error is that the domestic relations court failed to address his App.R. 9(C) statement "promptly filed" on April 15, 2025. However, the lower court's docket does not record the filing of an App.R. 9(C) statement on April 15, 2025, or any other date. Rather, on April 17, Wilcox filed a praecipe

Case No. 2025-T-0040

to the court reporter for the preparation of a transcript and, on May 5, a Notice Regarding Transcript Unavailability including the purported Affidavit of Evidence discussed above.

{¶31}  In any event, the statement of evidence in lieu of a transcript provided for in the Appellate Rules is not a substitute for the affidavit of evidence required when proceedings are held before a trial court magistrate.  "Case law already provides that an appellate court will not review [a magistrate's] factual findings on appeal unless the appellant provided the trial court with that description of the evidence and that a statement under App.R. 9(C) or App.R. 9(D) does not overcome this problem."  (Citation omitted.) *State ex rel. Pallone v. Ohio Court of Claims*, 2015-Ohio-2003, ¶ 13.

{¶32}  Wilcox also argues that the failure to produce a transcript of the *in camera* interview of the children constitutes error: "Ohio appellate courts generally require that such interviews be recorded … to allow for appellate review of how the children's preferences were considered."  Brief of Appellant at 7.  Although Ohio appellate courts, and this court in particular, do require such interviews to be recorded, the failure to do so does not constitute reversible error in the present case where the children's wishes were reported by the guardian ad litem and in light of the "special weight" and "extreme deference" to be accorded the mother's wishes.  *In re B.B.W.*, 2024-Ohio-3030, ¶ 22 (2d Dist.) (noting that "special weight" has been described as "*extreme deference*") (citations omitted).

{¶33}  In considering whether to grant visitation rights, "the court, in its discretion, may interview in chambers any or all involved children regarding their wishes and concerns."  R.C. 3109.051(C).  Although the visitation statute does not expressly require

Case No. 2025-T-0040

that such *in camera* interviews be recorded, this court and others have held that such interviews should be recorded and kept under seal.

{¶34} "Trial courts are required 'to make a record of any in camera interview with children involved in custody proceedings, … [to] ensure that an appellate court can effectively review the trial court's decision pertaining to custody matters.'" (Citation omitted.) *Jackson v. Herron*, 2005-Ohio-4046, ¶ 16 (11th Dist.); *Guliano v. Guliano*, 2011-Ohio-6853, ¶ 36 (11th Dist.) ("[t]rial courts shall make a record of any in camera interview with children involved in custody proceedings, to be kept under seal for review on appeal"); *In re A.M.R.*, 2017-Ohio-9178, ¶ 14 (8th Dist.) (same); *but see In re E.G.*, 2007-Ohio-3658, ¶ 10 (10th Dist.) ("[t]here appears to be a split among Ohio appellate courts regarding whether in camera interviews of children must be recorded").

{¶35} By requiring in camera interviews with children to be recorded and kept confidential (or under seal), the rights of parents are balanced against the desirability of "provid[ing] children with a forum for openly discussing their concerns and preferences regarding their own custody." *Jackson* at ¶ 17.

> The requirement that the in camera interviews be recorded is designed to protect the due-process rights of the parents. The due-process protection is achieved in this context by sealing the transcript of the in camera interview and making it available only to the courts for review. This process allows appellate courts to review the in camera interview proceedings and ascertain their reasonableness, while still allowing the child to "feel safe and comfortable in expressing his or her opinions openly and honestly, without subjecting the child to any additional psychological trauma or loyalty conflicts." See House, Considering the Child's Preference in Determining Custody: Is It Really in the Child's Best Interest?, 19 J.Juv.L. 176 (1998), at 186.

(Footnote omitted.) *Myers v. Myers*, 2007-Ohio-66, ¶ 50 (5th Dist.).

Case No. 2025-T-0040

{¶36}  In the present case, there is no indication that the *in camera* interview of the children was recorded or that, if recorded, such record was available for review by the domestic relations court upon consideration of the Magistrate's Decision or by this court on appeal.  If, in fact, the court failed to provide for a record of the *in camera* interview, the lower court erred.  *Guliano* at ¶ 37 ("[b]ecause the trial court was required to make a record of its in camera interview with the minor child, but failed to do so, the trial court committed error"); *Wilson v. Wilson*, 2009-Ohio-4978, ¶ 9 (4th Dist.) ("[i]t is error for a trial court to fail to read the transcript of a magistrate's in camera interview with a child before adopting and approving the magistrate's report") (citation omitted).

{¶37}  Such failure, however, was harmless and did not prejudice Wilcox' interests. Civ.R. 61 ("[t]he court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties").  The magistrate acknowledged that the children were interviewed, but gave no indication that the children's wishes had any influence on the court's decision.  The guardian ad litem also interviewed the children and reported the children's wishes regarding visitation.  The guardian further recommended allowing the possibility of visitation between Wilcox and the children.  Despite the guardian's report and recommendation in favor of visitation, the magistrate rightly concluded that the mother's wishes be accorded greater weight. *B.B.W.*, 2024-Ohio-3030, ¶ 27 (2d Dist.) ("[t]he scale was tipped in favor of Mother because of the special weight and extreme deference to be given to her wishes and concerns, while the burden of proof was on [the nonparent] to demonstrate that it was in the child's best interest for the visitation request to be established").  Given the foregoing circumstances, as well as Wilcox' failure to file a proper affidavit of evidence, we find no

Case No. 2025-T-0040

reversible error in the absence of a recording of the *in camera* interview between the magistrate and the children.

{¶38}   The fifth assignment of error is without merit.

{¶39}   For the foregoing reasons, the judgment of the Trumbull County Court of Common Pleas, Domestic Relations Division, is affirmed.  Costs to be taxed against the appellant.


MATT LYNCH, J.,

EUGENE A. LUCCI, J.,

concur.

Case No. 2025-T-0040

# JUDGMENT ENTRY

For the reasons stated in the Opinion of this court, the assignments of error are without merit.  The order of this court is that the judgment of the Trumbull County Court of Common Pleas, Domestic Relations Division, is affirmed.

Costs to be taxed against the appellant.

_____
JUDGE SCOTT LYNCH

_____
JUDGE MATT LYNCH,
concurs

_____
JUDGE EUGENE A. LUCCI,
concurs

| **THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY** |
| --- |
| A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure. |

Case No. 2025-T-0040